# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MELANIE A. OGLE,

                   Petitioner,             :     Case No. 2:15-cv-776

   - vs -                                 Chief Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Michael R. Merz

GARY C. MOHR, DIRECTOR,
 Ohio Department of Rehabilitation
 And Correction,
                                  :
                 Respondent.

# REPORT AND RECOMMENDATIONS

This action is before the Court on Ogle's Petition for Writ of Habeas Corpus and Amended Petition (ECF Nos. 1, 21). The Warden filed an Answer/Return of Writ ("Return of Writ," ECF No. 14) and later an Amended Answer ("Amended Return of Writ," ECF No. 30) and the Petitioner filed a Reply in response ("Traverse," ECF No. 40). The case is thus ripe for decision.[1]

**Procedural History**

Petitioner, Melanie Ogle, was indicted on September 28, 2009, by a Hocking County Grand Jury on one count for assault on a peace officer. Petitioner, pro se, entered a plea of not guilty. Ogle then obtained counsel and the case proceeded to trial.

---

[1] Chief Judge Sargus has recently overruled Petitioner's Motion to Hold in Abeyance (ECF Nos. 81, 84).

The facts of the case as set forth by the Hocking County Court of Appeals, Fourth Appellate District of Ohio, on direct appeal are as follows:

[*P2] Ogle and Ohio Power Company have been engaged in civil litigation over the last several years. The disputes began with Ohio Power's desire to construct a telecommunications tower and obtain an easement through the Ogles' property. [FN2]

[FN2 The details of the continuing litigation are set forth in the following cases: *Ogle v. Ohio Power Co.*, 180 Ohio App. 3d 44, 2008 Ohio 7042, 903 N.E. 2d 1284; *Ohio Power Co. v. Ogle*, 4th Dist. Nos. 09CA1 & 09AP1, 2009 Ohio 5953; *Ohio Power v. Ogle*, 4th Dist. Nos. 10CA143, 10AP13, 2011 Ohio 3903; *Citizen of Hocking County v. Ohio Power Company*, 4th Dist. No. 11CA24, 2012 Ohio 4985; *Ogle v. Hocking Cty. Sheriff*, 4th Dist. No. 11AP13, 2012 Ohio 1768; and *Ogle v. Ohio Power Co.*, 4th Dist. No. 11CA27, 2012 Ohio 4986.]

[*P3] Very generally, the facts relating to Appellant Melanie Ogle's conviction for assault on a peace officer are set forth as follows. On September 9, 2009, after work, Appellant and her husband returned to their residence on Donaldson Road around 5:20 p.m. to find Pike Electric and American Electric Power, (hereinafter "AEP") vehicles parked on Donaldson Road. AEP's contractors were constructing an electric line. The access to the Ogles' driveway was blocked by three trucks. Appellant and her husband began honking the horn and yelling at the workers.

[*P4] At the same time and place, Hocking County Sheriff's Deputy Trent Woodgeard (hereinafter, "Woodgeard") was working a special assignment on behalf of AEP to keep peace and order at the job site. Because of the commotion Appellant and her husband were making, Woodgeard decided to initiate contact.  When he attempted to do so, Appellant and her husband failed to comply with requests he testified he made. Instead, when able, the Ogles evaded Woodgeard and drove into their driveway.  They testified they drove away because the officer was trying to get into their vehicle and they had done nothing wrong. Woodgeard pursued the Ogles and a physical confrontation ensued outside their residence between Woodgeard and Appellant.

[*P5] As a result of the events which transpired on September 9th, 2009, Appellant was indicted by the Hocking County Grand Jury

2

on one count of assault of a peace officer. The case proceeded to the jury trial and on August 11, 2011, the jury returned a verdict of guilty. Appellant was sentenced to six months in a county jail [FN3], a fine and restitution. . . .

> [FN3 Appellant was sentenced to "a county jail." The transcript of the sentencing hearing stated: "[a] county jail that is not run or enforced by our local sheriff, " presumably due to the strained nature of the relationship between Appellant and county officials indicated in this case and *Ogle v. Hocking County Sheriff*, Hocking County Prosecutor Attorney, 4th Dist. No. 11AP13, 2012 Ohio 1768.]

****

Supplemental facts

**[\*P6]** At trial, the State of Ohio presented testimony from Jason Stacy, Sheriff Lanny North, Trent Woodgeard, and Sgt. Kevin Groves. Jason Stacy, a supervisor for AEP, testified AEP was slightly behind in their work on September 9, 2009. The workers had just set a pole and were trying to connect the line. Three trucks in fact were blocking the Ogles' driveway. The job site was loud due to the diesel trucks and the drilling that was being done.

**[\*P7]** Stacy testified he was talking with Woodgeard when he heard aggressive and repetitive honking. He could see someone in a black truck acting in a threatening manner and cursing. At this point, he felt uncomfortable in turning his back. He saw Woodgeard go from one side of the truck to the other trying to get the situation calmed down. Specifically, he observed Woodgeard say to the female passenger "Calm down, knock it off." The truck sped away and Woodgeard followed in his vehicle. At this point, Stacy could not see what happened on the Ogles' property. Stacy testified it was the most threatening incident he had seen on the job.

**[\*P8]** Sheriff Lanny North testified Woodgeard was employed by the Hocking County Sheriff's Department on the date of the incident. AEP had previously contacted the sheriff's office in order to obtain an officer to keep the peace at the job site on Donaldson Road. He acknowledged there was no written contract between AEP and the sheriff's department.

**[\*P9]** Woodgeard also testified he was a full-time deputy with the Hocking County Sheriff's Office, working special duty on behalf

3

of AEP when the altercation occurred. Woodgeard was wearing his deputy's uniform and driving a sheriff's cruiser. He had been authorized by the sheriff's department to do so.

[*P10] Woodgeard's version of the events leading to his assault began as he watched the Pike Electric and AEP workers on Donaldson Road. When Woodgeard heard honking and yelling, he also noticed the Ogles' truck parked in front of an AEP truck. He saw the passenger in the truck throw up her hands, moving around inside and yelling. He first decided to let her vent. An AEP employee went to move the AEP truck, but Mrs. Ogle continued to scream.

[*P11] Woodgeard decided to address the situation with Appellant so he walked to the passenger side of the truck, made direct eye contact with her, and asked her to step outside. [FN4] She did not comply and continued to yell. Woodgeard placed his hand on the passenger side door and the Ogles drove away at a high rate of speed. Woodgeard radioed for assistance and followed the Ogles into their driveway in his cruiser.

> [FN4 Woodgeard knew Melanie Ogle as he graduated from high school with her son.]

[*P12] According to Woodgeard's testimony, once on the Ogle's property, Appellant came charging at Woodgeard, irate and belligerent. She actually made contact with Woodgeard's face with papers [FN5] in her hand. Woodgeard asked Appellant to "calm down" repeatedly, but Appellant was trying to kick Woodgeard while her husband was trying to hold her back. Woodgeard advised Mr. Ogle to step back, that Appellant was under arrest for disorderly conduct. Woodgeard testified Mr. Ogle stepped back, but again, Appellant would not comply. Woodgeard took Appellant's right arm and attempted to handcuff her. Appellant continued kicking Woodgeard's shins and she kicked his genitals once. Woodgeard then used pepper spray to subdue Appellant.

> [FN5 These papers, Appellant testified, consisted of a copy of an Ohio Attorney General's opinion regarding the township's authority to issue permits and supported her belief AEP was "breaking the law by blocking their driveway."]

4

[*P13] At this point, Mr. Ogle came towards Woodgeard and was advised to stay back. When Mr. Ogle refused to comply, Woodgeard deployed pepper spray at him. When the spray took effect, Appellant buckled and fell to the ground. Appellant and Woodgeard continued to struggle in the yard. Woodgeard was eventually able to handcuff her and place her in a cruiser.

[*P14] Sergeant Kevin Groves also testified Woodgeard was working special detail on September 9th. Sgt. Groves was present in the sheriff's office when Woodgeard radioed for backup. Groves responded to the scene and saw Woodgeard in distress. Groves ordered photographs be taken and he took a recorded statement from Mr. Ogle.

[*P15] After Groves' testimony, the State offered its exhibits and rested. The defense made a Crim. R. 29 motion, specifically arguing the State had not presented sufficient evidence Woodgeard was a law enforcement officer acting in an official capacity at the time and further, there was no sufficient evidence as to the remaining elements of the offense. The motion was denied. The defense proceeded with its case and witnesses Jesse Ward, Randall Thompson, Charles Ogle, and Melanie Ogle.

[*P16] Jesse Ward testified he was working for Pike Electric on the incident date. He saw a black pickup arrive on Donaldson Road as he worked nearby. Mr. Ward heard screaming, but denied hearing curse words or feeling threatened.

[*P17] Randall Thompson also testified he worked for Pike Electric and was present that day. He acknowledged the job site was loud and it was "difficult to hear." He testified the voices that were yelling did not interrupt his work.

[*P18] The Ogles' collective version of the events unfolding on Donaldson Road and on their property differs somewhat from that presented by the State's witnesses. Charles Ogle testified when he and his wife reached home and found their driveway blocked, they stopped the truck and waited for "close to a minute" before he began honking and the couple began screaming. He testified Appellant yelled "you bastards have no right to be blocking the road!" His own words were "move your fucking trucks."

[*P19] After the commotion began, the workers dispersed and the deputy came at the Ogle's truck quickly and aggressively. The officer said something Mr. Ogle could not hear. The officer tried the doors. As soon as the road was clear, Ogle turned into his

driveway towards his house. He and his wife began to unload groceries and other items from their truck when they heard and saw a vehicle proceeding up their driveway. Soon Woodgeard was walking towards them with handcuffs, while Appellant was walking towards Woodgeard, waving papers in his face. The officer told Appellant to "put her hands out." The Ogles began backing away from the officer. Woodgeard attempted to handcuff Appellant. When the Ogles reached their sidewalk, Woodgeard pepper-sprayed Appellant, then her husband. Appellant and Woodgeard struggled. Appellant was slammed to the ground. Mr. Ogle was pepper-sprayed a second time. Woodgeard was walking towards Appellant, and she kicked out. Mr. Ogle testified "I believe she made contact."

[*P20] On cross-examination, Appellee played Mr. Ogle's recorded statement to Sergeant Groves for the jury. This was allowed after the trial court listened to the CD and determined there were several significant inconsistencies between the statement and Ogle's testimony. On the CD, Mr. Ogle states Woodgeard told Appellant to get out of the vehicle, which contradicts his testimony that he could not hear what the officer said. On the CD, the jury also heard Mr. Ogle say: "Okay. She didn't want to be handcuffed because she didn't do anything wrong. Okay. And so, you know, he grabs hold of her and she kicks at him a couple of times and then, you know, this happens." Mr. Ogle informed there were a lot of things left out of the oral statement. He admitted the audio tape was correct as a whole. On redirect, Mr. Ogle clarified Woodgeard "pepper-sprayed my wife before there was ever any kick."

[*P21] Appellant's testimony mirrored her husband's. She testified the officer was trying to get in their truck, so when able, they drove up their driveway. Outside their home and truck, Appellant began walking towards Woodgeard, intending to show him the papers. She was wearing a shoulder bag which contained her lunch pails and Kroger bags. In her words, the "next thing she knew, Woodgeard swung her around and maced" her. Appellant denied kicking Woodgeard before he maced her. After she was maced, she ran into the yard, in pain and screaming, trying to get her bearings and get into the house. She testified she made a "conscious decision" to drop her shoulder bag, so she could get away from Woodgeard. She was bent over looking at the ground, saw tan pants, and thought Woodgeard was coming at her again. Appellant testified she believed "he was going to tase [her] and [she] would die." Appellant testified she kicked in Woodgeard's direction and

6

> ran. She didn't know if she made contact with him. She testified
> she kicked out as reflex action, to protect herself.

*State v. Ogle*, 2013-Ohio-3420, 2013 Ohio App. LEXIS 3510 (4th App. Dist. Ohio 2013).

Before sentencing Ogle, again pro se, filed several motions in the trial court, including

motion for acquittal pursuant to Ohio Crim R. 29(C), a motion for new trial pursuant to Rule 33,

a motion to amend the motion for new trial, and a request for hearing and protective order. After

the motions were denied, Ogle filed a motion to vacate the judgment denying her motion for

acquittal and a new trial or for reconsideration. On September 27, 2011, the trial court held a

sentencing hearing and issued a judgment entry of conviction and handed down a sentence of six

months in county jail and three years community control.

Ogle, pro se, filed several separate appeals related to the various judgments connected to

this case, including her conviction, the bond, and denial of new trial (Return of Writ, ECF No.

14, PageID 1050)(The case numbers in the Fourth Appellate District Court of Appeals are

11CA29, 11CA32, 12CA2, 12CA11, 12CA12, and 12CA19). The Fourth Appellate District

considered these appeals together and affirmed Ogle's conviction. *Ogle*, 2013-Ohio-3420.

On August 5, 2013, Ogle then filed an application for reconsideration, which was denied

by the Fourth Appellate District on December 2, 2013. This was followed by a notice of appeal

to the Supreme Court of Ohio and motion for delayed appeal (Mr. and Mrs. Ogle have several

appeals listed in the Ohio Supreme Court, but the appeal relevant to this case is number 2014-

0101)(Return of Writ, ECF No. 14, PageID 1052). The Ohio Supreme court denied the motion

on March 12, 2014, and the United States Supreme Court denied *certiorari* in November of

2014. *Id*. at 1057.

Then Ogle filed two additional applications to reopen, one in specific reference to appellate case number 11CA29. The motions were denied, as was the motion for reconsideration filed shortly thereafter.

Ogle, pro se, filed her Petition for Writ of Habeas Corpus in this Court on March 4, 2015 (ECF No. 1). Attorney Eric Allen filed a notice of appearance on behalf of Petitioner on August 4, 2015 (ECF No. 28). On July 13, 2016, a notation order was entered granting Attorney Allen's Motion to Withdraw (ECF No. 65) and Petitioner is again proceeding in the matter *pro se*. Ogle raises the following grounds for relief:

### Ground One

Petitioner was denied counsel in violation of her Sixth and Fourteenth Amendment rights under the U.S. Constitution during a September 27, 2011 hearing for conviction and sentencing in Hocking County Common Pleas Court, Case No. 09CR0125, and was therefore, unlawfully sentenced and imprisoned pursuant to a void September 28, 2011 JUDGMENT ENTRY OF CONVICTION AND SENTENCE, contrary to clearly established federal law.

### Ground Two

The false testimony of the state's sole witness and alleged victim, deputy Trent Woodgeard, to alleged events and the alleged crime for which Petitioner was indicted, affected the judgment of the jury, undermined the fairness of the trial, and violated Petitioner's Constitutional rights to due process, the testimony of which was suborned by the state, has gone uncorrected and the prosecutor has failed to seek truth and justice; the false testimony of the state's allegedly "threatened" witness, Jason Stacy, to events and his and others' alleged acts on Donaldson Road to support the state's theory of alleged criminal activity on Donaldson Road to justify Woodgeard's hot pursuit and an element of the alleged crime, affected the judgment of the jury, undermined the fairness of the trial, and violated Petitioner's Constitutional rights to due process, the testimony of which was suborned by the state, has gone uncorrected and the prosecutor has failed to seek truth and justice.

## Ground Three

Denial of Petitioner's post-conviction motions for leave for new trial and the decisions on the merits of withheld and newly discovered evidence by the Fourth District Appellate Court in Case Nos. 12CA2, 12CA19, and 13CA9, were contrary to clearly established federal law, rising to Constitutional infringement under the Sixth and Fourteenth Amendments, since the information was material to the preparation of a defense and favorable to Petitioner and material to guilt or punishment.

## Ground Four

The trial court erred in failing to grant a judgment of acquittal at the close of the state's evidence, since the same was insufficient to prove all statutory elements required for a conviction of assault on a peace officer, rendering Petitioner's conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment; and the appellate court's decision that sufficient evidence was presented at trial from which a reasonable jury could determine all elements of the alleged crime were proven is an objectively unreasonable application of clearly established federal law; and the appellate court's reliance on theory and law of which the jury was not instructed to affirm an element of the alleged crime to sustain a conviction, are all contrary to clearly established federal law, in violation of Petitioner's appellate due process rights; and new evidence withheld by the prosecution undermines the elements of the alleged crime as presented by the state and the new evidence is of central importance to proving the elements of the alleged offense cannot be sustained in violation of Petitioner's right to due process, which protects the accused against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the alleged crime, and the new evidence attached hereto and incorporated herein, supports a real basis for actual innocence of Petitioner for the fourth degree felony crime of assault on a peace officer and violation of Petitioner's Constitutional rights under Fifth, Sixth and Fourteenth Amendments, and a gateway for the following requested relief.

## Ground Five

Petitioner was denied effective assistance of appellate counsel rising to Constitutional infringement under the Sixth and

9

Fourteenth Amendments.

### Ground Six

The jury instructions were so improper, erroneous and ambiguous, including a lack of Constitutional rights instructions, as to have misled the jury in matters materially affecting Petitioner's substantial rights rising to a Constitutional infringement, and Petitioner was prejudiced by defense counsel's failures to request or object to instructions that affected Petitioner's substantial rights.

### Ground Seven

The appellate court considered a new theory (and by the state's specificity in its brief, a new fact) first presented on appeal, and relied upon the same and/or its own theory and non-existent "facts", which had not been before the jury, contrary to clearly established federal law; and failed to reconcile the state's hard evidence with state's sole key eyewitness testimony, rising to a Constitutional infringement against Petitioner.

### Ground Eight

New evidence of juror misconduct and juror non-disclosure rise to Constitutional infringement of Petitioner's due process rights to a fair and impartial jury trial, and cause and prejudice prevents Petitioner from exhausting any possible state court remedy regarding the same.

# Analysis

## Ground One

> Petitioner was denied counsel in violation of her Sixth and
> Fourteenth Amendment rights under the U.S. Constitution during a
> September 27, 2011 hearing for conviction and sentencing in
> Hocking County Common Pleas Court, Case No. 09CR0125, and
> was therefore, unlawfully sentenced and imprisoned pursuant to a
> void September 28, 2011 JUDGMENT ENTRY OF
> CONVICTION AND SENTENCE, contrary to clearly established
> federal law.

In her First Ground for Relief, Ogle alleges that she was deprived of her constitutional

rights in that she was denied counsel during a hearing and sentencing (Petition, ECF No. 1,

PageID 16-20); (Amended Petition, ECF No. 21, PageID 2793).

Respondent asserts that this ground is procedurally defaulted (ECF No. 14, PageID 1062-

68); (ECF No. 30, PageID 3056-57).[2]   In addition, Respondent asserts that "Ogle was not

deprived of counsel at sentencing but rather attempted to create an issue by her passive-

aggressive attitude to the trial court . . ." and thus the claim of denial of counsel is "utterly

meritless." (ECF No. 30, PageID 3057.)

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an adequate and independent state
> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or

---

[2] Respondent amended his original Answer (ECF No. 14) with ECF No. 30. However, in response to several of the
grounds for relief, Respondent rested on arguments previously raised in the First Answer/Return of Writ. See ECF
No. 30, PageID 3057.

> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

As the Sixth Circuit has explained the distinction, "[a] claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

At the time she was sentenced in this case, Ogle could have presented her claim on direct appeal to the court of appeals, but she did not do so. Rather she presented a semblance of this ground as propositions of law 13, 14, and 17 to the Ohio Supreme Court on direct appeal.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Riggins v. McMackin*, 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner*

13

*v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009).  The Ohio Supreme Court by rule does not consider propositions of law not raised in the intermediate appellate court.  Therefore, they would not have considered the propositions of law before them, as Ogle did not properly raise them in the Court of Appeals.  Thus Ohio has a rule that is regularly enforced and followed and Ogle failed to comply with it.  This ground is procedurally defaulted.

In the alternative, this ground is without merit.  "The right of an indigent defendant in a criminal trial to the assistance of counsel, which is guaranteed by the Sixth Amendment as made applicable to the States by the Fourteenth, *Gideon v. Wainwright*, 372 U.S. 335, is not governed by the classification of the offense or by whether or not a jury trial is required.  No accused may be deprived of his liberty as the result of any criminal prosecution, whether felony or misdemeanor, in which he was denied the assistance of counsel." *Argersinger v. Hamlin*, 407 U.S. 25, at syllabus (1972).  "In *Washington v. Texas*, *supra*, we said, 'we have held that due process requires that the accused have the assistance of counsel for his defense, that he be confronted with the witnesses against him, and that he have the right to a speedy and public trial.'" *Id.* at 28, citing 388 U.S. at 18; *see also Powell v. Alabama*, 287 U.S. 45 (1932)(capital cases); *Gideon v. Wainwright*, 372 U.S. 335 (1963)(felony cases); *Alabama v. Shelton*, 535 U.S. 654 (2002)(even if sentence is suspended).

Any waiver of the right to counsel at trial must be knowing, intelligent, and voluntary. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  "Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger*, 407 U.S. at 37.

At the hearing held on September 27, 2011, Ogle was given a waiver of counsel form in response to her notice of *pro se* appearance (ECF No. 13-3, PageID 1017).  She advised the court

that she had changed her mind and would like to proceed with representation of counsel, however she lacked the ability to obtain such counsel. *Id*.

>    The Court: Okay. Have you tried to retain counsel?
>
>    Defendant: I have an inability to obtain counsel.
>
>    The Court: Okay, are you requesting the Court appoint counsel for you?
>
>    Defendant: I have an inability to obtain counsel
>
>    The Court: Okay. Now, let me ask  the question again because the fact that you have the inability to pay for counsel doesn't mean that you want counsel and I'm asking you, do you want the Court to appoint counsel for you? Is that what you are asking?
>
>    Defendant: I have an inability to obtain counsel.
>
>    The Court: Okay
>
>    Defendant: And I do not waive my right to counsel.
>
>    The Court: Okay, what I'm going to do at this point and I'm just going to ask you and you can answer it any way you want to. You have a right to be represented by counsel in the sentencing hearing. If you cannot afford counsel, the Court would appoint counsel for you. If you want to represent yourself as you have told me in writing that you knowingly, voluntarily waive your right to counsel, you may proceed without counsel. If you want the Court to appoint counsel, I will appoint counsel for you at no expense assuming that I can determine that you have the inability to pay. So do you want the Court to appoint counsel?
>
>    Defendant: I do not waive my right to counsel and I have an inability to obtain counsel.
>
>    The Court: Okay. Well, I can't ask it any clearer so I will take your notice of pro se appearance as a voluntary waiver of your right to counsel at this point in time because you have not requested the Court appoint counsel on your behalf.
>
>    Defendant: I do not waive my right to counsel - -
>
>    The Court: Okay.

> Defendant:  -- on the record.
>
> The Court:      That's fine. I've asked you if you want the Court to appoint counsel and you did not answer me that you want the Court to appoint counsel so - -

*Id.* at PageID 1017-1019.

A later exchange again shows that Ogle maintained that she had not waived her right to trial, but stopped short of requesting that the Court appoint counsel in her matter.

> Defendant: Oh, the presentence investigation. Again, I have not waived my right to counsel.
>
> The Court: All right.
>
> Defendant: Does the Court understand what that means?
>
> The Court: Yes, I understand what it means, but I can't do anything about that unless you tell me what you want me to do. I asked you if you want me to appoint counsel and you wouldn't answer that question so I - -
>
> Defendant: I did answer the question. I said I have an inability to obtain counsel and I said I have - - I do not waive my right to counsel.
>
> The Court: I understand that.
>
> Defendant: Okay. So this proceeding is in violation of my Sixth and Fourteenth Amendment Rights to the Constitution of the United States of America.
>
> The Court: Well, as I said, I could have ten different hearings, Mrs. Ogle, with you, and you could say the same thing, I haven't waived my right to counsel and then I don't know what I am supposed to do. I can't force counsel upon you. I have asked you if you want the Court to appoint counsel since you can't afford one. You won't answer yes under that question so I am going to proceed with sentencing.

*Id.* at PageID 1022-1024; *see also* PageId 1025-1028, 1031.

As Petitioner failed to state "yes" on any of the multiple occasions when asked by the

Court whether she wanted counsel, she did not clearly invoke this right.  Further, as shown later

in the transcripts, even if she had properly indicated her desire to be represented by counsel, she

failed to fill out an affidavit of indigency to demonstrate she was entitled to court appointed

counsel due to her financial situation (ECF No. 13-4, PageID 1037-1041).  This Ground for

Relief is without merit.


### Ground Two

> The false testimony of the state's sole witness and alleged victim,
> deputy Trent Woodgeard, to alleged events and the alleged crime
> for which Petitioner was indicted, affected the judgment of the
> jury, undermined the fairness of the trial, and violated Petitioner's
> Constitutional rights to due process, the testimony of which was
> suborned by the state, has gone uncorrected and the prosecutor has
> failed to seek truth and justice; the false testimony of the state's
> allegedly "threatened" witness, Jason Stacy, to events and his and
> others' alleged acts on Donaldson Road to support the state's
> theory of alleged criminal activity on Donaldson Road to justify
> Woodgeard's hot pursuit and an element of the alleged crime,
> affected the judgment of the jury, undermined the fairness of the
> trial, and violated Petitioner's Constitutional rights to due process,
> the testimony of which was suborned by the state, has gone
> uncorrected and the prosecutor has failed to seek truth and justice.


In her Second Ground for Relief, Ogle makes the argument that her conviction was based

upon perjured testimony from Woodgeard (Amended Petition, ECF No. 21, PageID 2800);

(Traverse, ECF No. 40, PageID 3137).  Specifically, that his testimony that he had been kicked

by Ogle in the groin area conflicted with a letter from his treating physician which referenced an

injury to the perineal area (Amended Petition, ECF No. 21, PageID 2801); (Traverse, ECF No.

40, PageID 3138).

Respondent reads this claim as Ogle objecting to not having receiving the report from Dr.

Sawyer prior to the start of the sentencing proceeding (Amended Return of Writ, ECF No. 30, PageID 3057, citing to Amended Petition, ECF No. 21, PageID 2800).  In reference to the letter, Respondent contends that it was introduced for the purposes of establishing Woodgeard's out-of-pocket medical expenses and not for the purpose of establishing guilt or innocence. *Id*. at 3058. Further, Respondent argues that this is not a constitutional question, so it is not cognizable in this Court. *Id*.

Petitioner raises this claim as a *Brady/Giglio/Napue* violation in her Petition, and this Court will consider it as such.  The State has a duty to produce exculpatory evidence in a criminal case.  If the State withholds evidence and it is material, the conviction must be reversed. *Brady v. Maryland*, 373 U.S. 83 (1963).  To achieve this goal, "*Brady* held 'that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995)(*quoting Brady*, 373 U.S. at 87).

The duty to disclose such evidence is applicable even though there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976).  Due process requires the court to look at the character of the evidence rather than the character of the state actor who failed to disclose it. *Moldowan v. City of Warren*, 578 F.3d 351, 384 (6th Cir. 2009), *citing Agurs*, 427 U.S. at 110.

There are three components of a true *Brady* violation: [(1)] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Brooks v.*

18

*Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010). The Supreme Court has rejected any distinction between impeachment evidence and exculpatory evidence in the *Brady* context. *Connick v. Thompson*, 563 U.S. 51, 99, n. 16 (2011), *quoting United States v. Bagley*, 473 U.S. 667, 676 (1985). In other words, impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Id.* Further, a *Brady* claim can arise when the government induces testimony known to be perjurious or which the prosecutor should have known was perjurious. *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997). This requires a finding of materiality where a prosecutor's knowing presentation of false evidence is found. *Brady*, 373 U.S. at 87.

In considering the interplay between *Brady* and *Giglio* violations, the Sixth Circuit has written:

> [There is a] difference between *Brady/Giglio* false-testimony claims and traditional *Brady* withholding claims. . . . *See* [*United States v.*] *Agurs*, 427 U.S. [97,] 104 [(1976)]. To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (placing the burden on the habeas petitioner). But in these *Brady/Giglio* claims, the materiality assessment is less stringent than that for more general *Brady* withholding of evidence claims. We weigh the materiality of *Brady* withholding claims by asking whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985))). By contrast, for *Brady/Giglio* claims, we ask only "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 104 (*citing Giglio*, 405 U.S. at 154); *see also Carter* [*v. Mitchell*], 443 F.3d [517,] 535 ](2006)]. The distinction matters here, because while a traditional *Brady* materiality analysis obviates a later harmless-error review under *Brecht v. Abrahamson*, [507 U.S. 619 (1993),] courts may excuse *Brady/Giglio* violations involving known and materially false statements as harmless error. *See Carter*, 443 F.3d at 537;

19

*Gilday* [*v. Callahan*], 59 F.3d [257,] 268 [(1st Cir. 1995)].

*Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009). *Wogenstahl v. Mitchell*, 668 F.3d 307, 323-324 (6th Cir. 2012), is to the same effect, citing *Rosencrantz*.

*Napue v. Illinois* dicatates that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman*, 178 F.3d at 766, *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl*, 668 F.3d at 323, *citing Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).

The Court must ask itself whether or not the letter, if withheld, was exculpatory. In this case it was not material but rather peripheral to the issue of whether or not Ogle had kicked Woodgeard and whether or not her actions were done in self-defense. *State v. Ogle*, 2013-Ohio-3420 (2013). The letter from Dr. Sawyer would have done little, if anything, to persuade the finder of fact on either of those determinations, especially as Ogle herself does not deny kicking in the officer's direction. The letter referenced a medical procedure to the "perianal" region (which is in the same region as the genitals despite Ogle's assertion that this discrepancy alone would have changed the outcome of her case) as a result of an abscess which may have resulted

20

from direct trauma, such as being kicked.  Facts that Woodgeard himself admitted to when giving his testimony, i.e. "having issues down there" and confirming the attorney's classification as "in the genital region" as well as twice stating that the injury could be, but not unequivocally was, caused by trauma.

> [*P69] Appellant complains the prosecutor submitted Woodgeard's testimony of surgery to his genitals to the jury as fact. The prosecutor questioned Woodgeard as follows:

>> Q: Did you need medical attention at a later time?
>> A: Yes, I did.
>> Q: What type of attention did you need?
>> Counsel: Objection, Your Honor.
>> The Court: Overruled.
>> Q: You can answer that.
>> A: About two weeks later I was having issues down there. I was admitted in the hospital for two nights and had surgery and was off work for about a month.
>> Q: When you say down there, you mean your genital region?
>> A. Yes sir.

> [*P70] On cross-examination, Appellant's counsel further explored the topic of surgery. Counsel elicited the following testimony from Woodgeard:

>> Q: ...Let's talk a little bit about the surgery. What exactly did they have to do?
>> A: They actually determined it was some sort of abscess which can be caused by trauma.
>> Q: Okay. And when did you first schedule the appointment with the doctor, was it prior to the incident?
>> A: There was no scheduling. It was straight to the ER.
>> Q: Okay. So you go to the ER and they admit you.
>> A: Yes.
>> Q: And it was just an abscess?
>> A: Yes.
>> Q: Okay. And it's just an abscess, is that what you're saying?
>> A: Yes.

> Q: Now are you indicating to this jury that the
> injury that you supposedly received from Melanie
> was the cause of it?
> A: I can't sit here and say. I'm not a licensed
> physician, but I can tell you want[sic] my doctor
> said that it could b--
> Q: Well, that's--we can't--
> A: --caused from trauma.
>
> **[\*P71]** We do not find Appellant was materially prejudiced or
> denied a fair trial by the testimony elicited by the prosecutor
> regarding Woodgeard's surgery. Again, the issue at trial was
> whether Appellant's kick was an assault or an act of self-defense.
> Any treatment Woodgeard had for his alleged injury was an
> extraneous issue, not material to Appellant's guilt.

*Ogle*, 2013-Ohio-3420.

As Ogle does not deny actually kicking the officer, there is not a reasonable likelihood that the "false testimony" or the introduction of the letter would have affected the judgment of the jury. Because it does not satisfy the materiality requirement, Petitioner's claim fails under *Brady*, *Giglio*, and *Napue*. This Ground is without merit.

### Ground Three

> Denial of Petitioner's post-conviction motions for leave for new
> trial and the decisions on the merits of withheld and newly
> discovered evidence by the Fourth District Appellate Court in Case
> Nos. 12CA2, 12CA19, and 13CA9, were contrary to clearly
> established federal law, rising to Constitutional infringement under
> the Sixth and Fourteenth Amendments, since the information was
> material to the preparation of a defense and favorable to Petitioner
> and material to guilt or punishment.

In her Third Ground, Ogle makes the argument that the state court erred when it denied her motion for new trial based on evidence that had been withheld and was favorable to her

22

defense (Amended Petition, ECF No. 21, PageID 2803). Specifically, she cites to the existence of the letter from Dr. Sawyer, Woodgeard's treating physician, that stated Woodgeard had had surgery for a "perianal abscess drainage" rather than surgery on his genitals. *Id.* at PageID 2805. Additionally, Ogle argues that the State withheld other evidence, such as false statements to support a claim of disorderly conduct, contradictions in testimony, impeachment evidence, and evidence that Woodgeard had been demoted and subsequently resigned his position with the Sheriff's office. Ogle argues that based on the State's withholding of this information, the court's denial of her motion for a new trial violated her Sixth and Fourteenth Amendment rights.

Respondent affirms that the state court of appeals addressed Ogle's Third Ground for Relief, and as such it is preserved for merits review under 28 U.S.C. 2254(d) (ECF No. 30, PageID 3058-9). However, to succeed on this claim Ogle "must demonstrate that the trial court's denial of her motion for new trial was so egregious that it violated her right to a fundamentally fair trial." *Id.*, *citing Pudelski v. Wilson*, 576 F.3d 595, 612 (6th Cir. 2009), and *Marshall v. Warden*, *Ross Corr. Inst.*, No. 1:09cv429, 2013 WL 6081631, *9 (S.D. Ohio Nov. 19, 2013).

Respondent continues by arguing that the state court determined that Ogle's claimed new evidence, the letter from Dr. Sawyer introduced during sentencing, was peripheral to the issue of whether or not Woodgeard had been kicked and whether or not Ogle's actions were done in self-defense. *Id.* at PageID 3059, *citing State v. Ogle*, 2013-Ohio-3420, ¶ 67 (2013). As Ogle does not denying actually kicking the officer, the letter would not have made a difference in the outcome of her trial. *Id.* at PageID 3059-60.

Further, Respondent claims that while it appears that Ogle filed a second motion for new

trial, which was denied by the state court of appeals (*see State v. Ogle*, 2013 Ohio 3770 (4th App. Dist., 2013)), that second motion for new trial is not cognizable in federal habeas corpus. *Id*. at PageID 3060, *citing Marshall v. Warden*, *Ross Corr. Inst.*, 2012 WL 3811801, *20-21 (Sept 4, 2012)("This Court is not aware of any United States Supreme Court precedent requiring a state court to grant a new trial upon the presentation of a certain level of probative but newly-discovered evidence.")

In her Traverse, Petitioner counters Respondent's argument by alleging that in fact the decision by the state court was so egregious that it violated her right to a fundamentally fair trial (Traverse, ECF No. 40, PageID 3139).

In addressing this claim on direct appeal (case number12CA2)[3] the court held:

Assignment of Error

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION FOR NEW TRIAL.
II.
Supplemental facts

[*P59] During Appellant's September 27, 2011 sentencing hearing, the trial court referenced a 2010 letter from Dr. Margaret Sawyer. Appellant contends (1) neither she nor her attorneys were provided discovery of the letter prior to trial, and the letter contained information material to the preparation of a defense; (2) the prosecutor engaged in misconduct during trial by eliciting testimony from Woodgeard about his surgery and "presenting it as fact" to the jury; and, (3) the prosecutor misstated the Ogles' testimony in his closing argument. Appellant argues these alleged errors prejudiced her and affected the outcome of the trial.

[*P60] With this appeal, Ogle contests the January 9, 2012 entry which overruled her November 28, 2011 motion for new trial. The entry from which she appeals stated she had previously filed a motion for new trial, and the November 2011 motion raised no

---

[3] The court combined Ogle's several separately filed appeals in this matter when rendering its decision.

new issues.[FN8] Upon review, we note the November 2011 motion for new trial did raise a new issue with respect to Dr. Sawyer's letter.

> [FN8 Appellant filed a motion for acquittal and new trial on August 25, 2011. It was denied by entry of September 21, 2011. ]

## A. STANDARD OF REVIEW

[*P61] "Generally, a decision on a motion for a new trial is within the discretion of the trial court." *State v. Lusher*, 2012 Ohio 5526, 982 N.E.2d 1290, 2012 WL 5984932, ¶ 25, citing *State v. Ward*, 4th Dist. No. 05CA13, 2007 Ohio 2531, 2007 WL 1518611, ¶ 41, citing *State v. Schiebel*, 55 Ohio St. 3d 71, 564 N.E. 2d 54 (1990), paragraph one of the syllabus. Accordingly, we will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *State v. Nichols*, 4th Dist. No. 11CA912, 2012 Ohio 1608, 2012 WL 1204015, ¶ 61.

[*P62] However, when evidence available to the prosecution is withheld from the defense, the issue on review is different than if the evidence had been discovered from a neutral source. When material, exculpatory evidence is withheld by the prosecution in a criminal proceeding, a defendant's due process right to a fair trial under the Fourteenth Amendment is violated. The usual standard of review for a new trial is not applicable regardless of the good or bad faith of the prosecution. *State v. Phillips*, 4th Dist. Nos. 89-CA-32, 89-CA-33, 1992 Ohio App. LEXIS 1016, 1992 WL 42790, (Mar. 5, 1992); *State v. Johnston*, 39 Ohio St. 3d 48, 60, 529 N.E.2d 898 (1988), quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[*P63] The standard used to determine whether defendant should receive a new trial due to a prosecutor's failure to disclose evidence is that the defendant must have been deprived of his right to a fair trial due to the prosecutor's omission. *Phillips*, supra, 1992 Ohio App. LEXIS 1016, [WL] at *3. Absent a constitutional violation, the prosecution's constitutional duty to disclose is not breached. Id, citing *United States v. Bagley*, 473 U.S. 667, 675-676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

"The Ohio Supreme Court has held that:

> 'The suppression by the prosecution of evidence

25

favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (Internal citation omitted). In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Phillips*, supra, 1992 Ohio App. LEXIS 1016, citing *Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1984). The issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material. *Phillips*, supra, 1992 Ohio App. LEXIS 1016, [WL] at *3.

B. LEGAL ANALYSIS

Dr. Sawyer's Letter

[*P64] Appellant argues she is entitled to a new trial pursuant to Crim.R. 33(A)(6) because the State failed to disclose the letter. Crim R. 33(A)(6) provides for the granting of a new trial when new evidence material to the defense is discovered, and which the defendant could not with reasonable diligence have discovered and produced at trial. For the reasons which follow, we are not persuaded.

[*P65] Dr. Sawyer's letter advised Woodgeard underwent a perianal abscess drainage procedure in the weeks subsequent to the altercation with Appellant. The letter informed "this type of abscess can occur because of an infected hair follicle, a cut, abrasion, sweat gland, or by direct trauma." Appellant argues the letter was material to her defense in that it provided "conclusive medical fact" Woodgeard's procedure was not for an injury to his genitals. Woodgeard testified to being kicked one time in his genital area. The State emphasizes the letter was not used at trial and therefore, Ogle was not prejudiced.

Crim.R. 16(B)(1)(f) provides:

Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence known or which may become known to the prosecuting

26

attorney, favorable to the defendant and material either to guilty or punishment.***

**[\*P66]** In this matter, we do not believe the letter from Dr. Sawyer is so helpful that its disclosure to Appellant prior to trial would have aided in Appellant's defense and affected the outcome of her trial. The mere possibility that an undisclosed statement might have helped his[sic] defense is not sufficient to establish "materiality" in the Constitutional sense. Id., citing *Agurs*, supra, at 109-110.

**[\*P67]** Appellant does not explain how the letter would have helped her defend her case, other than repeated references to Woodgeard's testimony that he was kicked in the "genitals" and to a lack of testimony that he was kicked in the "perianal" area. Appellant is not a medical expert and neither are we. Without more to substantiate her allegation that the letter provides "conclusive medical fact," we cannot find a reasonable probability that Appellant would have been acquitted if this letter had been available to her prior to trial. The information contained in the letter is peripheral to the issues before the jury, whether or not Woodgeard was assaulted and, if so, did Appellant act in self-defense. We find no reasonable probability the result of Appellant's trial would have been different had she possessed the letter, especially in light of Mr. Ogle's admission on the CD that he heard Woodgeard's directive to his wife to step outside their vehicle and Appellant's admission at trial she saw Woodgeard's tan pants and kicked in his direction.

Prosecutorial Misconduct

**[\*P68]** Appellant also argues she is entitled to a new trial pursuant to Crim.R. 33(A)(2) which provides a new trial may be granted on motion of the defendant for misconduct of the jury, prosecuting attorney, or the witnesses for the state. "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Jackson*, 4th Dist. No. 11CA20, 2012 Ohio 6276, 2012 WL 6761891, ¶ 35, quoting *State v. Leonard*, 4th Dist. No. 08CA24, 2009 Ohio 6191, 2009 WL 4050254, ¶ 36, citing *State v. Smith*, 97 Ohio St. 3d 367, 780 N.E.2d 221 (2002), ¶ 45, in turn citing *State v. Smith*, 14 Ohio St. 3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 (1984). "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.'" *State v. Givens*, 4th Dist. No. 07CA19, 2008 Ohio 1202, 2008 WL 699044,¶ 28, quoting *State v. Gest*, 108

Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). *Accord State v. Apanovitch*, 33 Ohio St. 3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances." *State v. Edgington*, 4th Dist. No. 05CA2866, 2006 Ohio 3712, 2006 WL 2023554, ¶ 18, citing *State v. Keenan*, 66 Ohio St. 3d 402, 406, 613 N.E.2d 203 (1993). The "touchstone of analysis* * * is the fairness of the trial, not the culpability of the prosecutor.* * *The Constitution does not guarantee an 'error free, perfect trial.'" *Leonard* at ¶ 36, quoting *Gest* at 257, 670 N.E.2d 536.

[*P69] Appellant complains the prosecutor submitted Woodgeard's testimony of surgery to his genitals to the jury as fact. The prosecutor questioned Woodgeard as follows:

> Q: Did you need medical attention at a later time?
> A: Yes, I did.
> Q: What type of attention did you need?
> Counsel: Objection, Your Honor.
> The Court: Overruled.
> Q: You can answer that.
> A: About two weeks later I was having issues down there. I was admitted in the hospital for two nights and had surgery and was off work for about a month.
> Q: When you say down there, you mean your genital region?
> A. Yes sir.

[*P70] On cross-examination, Appellant's counsel further explored the topic of surgery. Counsel elicited the following testimony from Woodgeard:

> Q: ...Let's talk a little bit about the surgery. What exactly did they have to do?
> A: They actually determined it was some sort of abscess which can be caused by trauma.
> Q: Okay. And when did you first schedule the appointment with the doctor, was it prior to the incident?
> A: There was no scheduling. It was straight to the ER.
> Q: Okay. So you go to the ER and they admit you.
> A: Yes.
> Q: And it was just an abscess?
> A: Yes.
> Q: Okay. And it's just an abscess, is that what you're

28

saying?
A: Yes.
Q: Now are you indicating to this jury that the
injury that you supposedly received from Melanie
was the cause of it?
A: I can't sit here and say. I'm not a licensed
physician, but I can tell you want[sic] my doctor
said that it could b--
Q: Well, that's--we can't--
A: --caused from trauma.

[*P71] We do not find Appellant was materially prejudiced or
denied a fair trial by the testimony elicited by the prosecutor
regarding Woodgeard's surgery. Again, the issue at trial was
whether Appellant's kick was an assault or an act of self-defense.
Any treatment Woodgeard had for his alleged injury was an
extraneous issue, not material to Appellant's guilt.

***

[*P75] We find the trial court did not abuse its discretion in
overruling the Appellant's motion for a new trial on the bases of
the prosecution's failure to disclose Dr. Sawyer's letter or the
alleged instances of prosecutorial misconduct. We therefore
overrule this assignment of error.

*Ogle*, 2013-Ohio-3420.

In a separate appeal (case number 12CA19), Ogle again raised the issue.  The court of

appeals addressed her claims as follows:

ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF
DEFENDANT-APPELLANT AS A MATTER OF LAW IN
DENYING HER A TRIAL BY WAY OF ITS AUGUST 6, 2012
ENTRY.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF
DEFENDANT-APPELLANT AS A MATTER OF LAW IN
DENYING HER MOTION FOR LEAVE TO FILE A MOTION
FOR NEW TRIAL BY WAY OF ITS AUGUST 30, 2012
ENTRY.

Supplemental facts

[**P105**] Appellant filed a Crim. R. 33(B) motion for leave to file a motion for new trial on August 2, 2012. In her memorandum of support, Appellant argued a new affidavit presented by Trent Woodgeard, contained testimony which differed dramatically from the testimony Woodgeard gave at the assault trial. [FN 10] She further argued she was unavoidably prevented from discovering the affidavit in order to file a timely motion for new trial.

> [FN 10 Appellants have filed a civil lawsuit in the United States District Court for the Southern District of Ohio. Woodgeard's affidavit containing alleged "dramatically differing testimony" was filed in the federal court case.]

[**P106**] The trial court filed an entry on August 6, 2012 denying the motion for the reason that Appellant did not provide "proof of differing testimony." The trial court's entry also indicated if differing testimony was provided, the court would reconsider the request. Upon receipt of the August 6, 2012 entry, Appellant filed a motion for an entry clarifying the August 6th entry. On August 27, 2012, the trial court filed a decision clarifying the August 6th Entry.

[**P107**] On August 29, 2012, Appellant filed a second motion for leave, again utilizing the newer affidavit of Trent Woodgeard. On August 30, 2012, the trial court denied Appellant's motion for leave a second time. Under this appellate case number, Ogle appeals the August 6, 2012 and August 30, 2012 entries denying her motions for leave.

A. STANDARD OF REVIEW

[**P108**] The 10th District Court of Appeals has held an abuse of discretion standard is to be applied in reviewing a court's denial of a motion for leave to file a motion for new trial. *State v. Anderson*, 10th Dist. No. 12AP-133, 2012 Ohio 4733, 2012 WL 4848949, at ¶ 9, citing *State v. Townsend*, 10th Dist. No. 08AP-371, 2008 Ohio 6518, 2008 WL 5196493, ¶ 8. In addition, "[I]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Anderson*, supra, quoting *State v. Morris*, 132 Ohio St. 3d 337, 2012 Ohio 2407, 972 N.E.2d 528 (2012), at ¶ 14. We will consider Appellant's two assignments of error under this case number

jointly.

B. LEGAL ANALYSIS

[*P109] Appellant argues that in her August 2, 2012 and August 29, 2012 Crim. R. 33(B) motions, she was requesting leave pursuant to the rule and the trial court erred by failing to follow a two-step process. She asserts the only decision before the trial court upon filing of her motions was to determine whether or not she had demonstrated she was unavoidably prevented from timely filing a motion for new trial and discovering the allegedly new evidence, i.e., the affidavit of Woodgeard filed in the federal court case. She concludes the trial court erred since it made no finding that she was unavoidably prevented from discovering Woodgeard's affidavit within the 120-day period prescribed by Crim.R. 33(B). Appellant has misinterpreted the rule.

[*P110] Crim.R. 33(B) imposes the following requirements for the filing of a motion for new trial as follows:

> Motion for new trial; **form time.** Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court **where ha [sic] trial by jury has been waived, unless it is** made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

31

[*P111] In *State v. Valentine*, 11th Dist. No. 2002-P-0052, 2003 Ohio 2838, 2003 WL 21267813, the trial court summarily overruled appellant's delayed motion for new trial. Valentine failed to offer any explanation as to why he was unavoidably delayed from discovering the proffered evidence. On appeal, Valentine argued the trial court had a duty to first determine if he was unavoidably prevented from discovering the new evidence within the 120-day time frame. The appellate court concluded it would have been better practice to clearly state the basis for overruling the motion, but under the facts, the trial court did not abuse its discretion.

[*P112] In *Anderson*, supra, the trial court denied appellant's motion for leave for the reasons that (1) the evidence was not "newly discovered" and, (2) the motion was not timely. The trial court did not issue an order stating that appellant had been unavoidably prevented from timely filing a motion for new trial. The appellate court, as in *Valentine*, concluded under the facts of the case, the trial court did not abuse its discretion by its implicit findings and, further, did not abuse its discretion in refusing to issue an order recognizing appellant had been unavoidably prevented from discovering the evidence at issue within the 120-day time period of Crim.R.33(B).

[*P113] In the case sub judice, the trial court denied the motion the first time it was presented. The trial court stated:

> Defendant has requested this Court to grant her a new trial pursuant to Crim. R. 33(B). Defendant asserts that the "victim" witness has provided testimony in an unrelated case that substantially differs from the testimony he gave a Defendant's trail. (sic.) The Defendant has not provided this Court with any proof of the differing testimony. The request is denied. However, if the Defendant provides this Court with the transcripts of the differing testimony the Court will consider the request.

[*P114] In Appellant's second motion, she attached Woodgeard's affidavit but failed to attach the trial transcripts. The trial court had nothing to compare to the affidavit of Woodgeard. In denying the second motion for leave, the trial court stated:

> The Court on two previous occasions advised the defendant it will not consider her motion for leave without all evidentiary matter supporting her motion

> being attached to the Motion for Leave. The Defendant has provided the affidavit off (sic.) Officer Woodgeard but has not provided a transcript of the trial testimony that she believes differs from the affidavit. The Motion is denied.
>
> **[*P115]** Standing alone, with no further explanation as presumably would be demonstrated by the trial transcripts, the trial court had no basis on which to conclude that the affidavit was, in fact, newly discovered evidence. Further, Appellant put forth no clear and convincing proof that she was unavoidably prevented from the discovery of the alleged new evidence. Without clear and convincing proof, the trial court is unable to make a specific finding or order.
>
> **[*P116]** It appears by the attempts to give guidance as to the filing of the motions for leave, the trial court was not completely unsympathetic to Appellant's cause. We can find no abuse of discretion in the denial of Appellant's motions for leave. These assignments of error are also overruled. The judgment of the trial court under this appellate case number is also affirmed.

*Id*.

The Constitution makes no mention of the right to new trial. *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993).  Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  However, habeas relief may be available where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).  "State law errors may warrant habeas relief if the errors 'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Hoffner v.*

*Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010), *quoting Barclay*, 463 U.S. at 957-58.  Therefore, Ogle will only succeed on this claim if she can demonstrate that the denial of her motion for a new trial was so egregious that it violated her right to a fundamentally fair trial.

Petitioner falls short of demonstrating such result.  As articulated by the state courts, and by this Court in the previous Ground for Relief, at issue at trial was whether or not Ogle intentionally kicked Woodgeard, and if so, whether she did so in self-defense.  The letter from Dr. Sawyer would have done little, if anything, to persuade the finder of fact on either of those determinations.  The letter referenced a medical procedure to the "perianal" region, which is in the same general region as the genitals despite Ogle's assertion, and may have been a result direct trauma to the area, i.e.- being kicked.

As for the remainder of her claim, it was before the state court at least three times, and on all occasions was denied based upon Ogle's failure to present proper documentation of the "new evidence" for the court to give proper consideration (See Entry, ECF No. 46-1, PageID 3359);(Entry, ECF No. 46-1, PageID 3360).  Due to the court's repeated guidance and allowing additional opportunities to present the new evidence, it is clear that this was not an error by the court in applying state law, but rather on the part of Petitioner.  Nor would the alleged errors have risen to the level of a denial of rights protected by the United States Constitution.  The Third Ground is without merit.

**Ground Four**

> The trial court erred in failing to grant a judgment of acquittal at the close of the state's evidence, since the same was insufficient to prove all statutory elements required for a conviction of assault on a peace officer, rendering Petitioner's conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment; and the appellate court's decision that sufficient evidence was

presented at trial from which a reasonable jury could determine all elements of the alleged crime were proven is an objectively unreasonable application of clearly established federal law; and the appellate court's reliance on theory and law of which the jury was not instructed to affirm an element of the alleged crime to sustain a conviction, are all contrary to clearly established federal law,[4] in violation of Petitioner's appellate due process rights; and new evidence withheld by the prosecution undermines the elements of the alleged crime as presented by the state and the new evidence is of central importance to proving the elements of the alleged offence cannot be sustained in violation of Petitioner's right to due process, which protects the accused against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the alleged crime, and the new evidence attached hereto and incorporated herein, supports a real basis for actual innocence of Petitioner for the fourth degree felony crime of assault on a peace officer and violation of Petitioner's Constitutional rights under Fifth, Sixth and Fourteenth Amendments, and a gateway for the following requested relief.

Petitioner argues that at the close of the state's case in the jury trial[5] the prosecution had presented evidence to support nothing more than a *possible* violation of Ohio's resisting arrest statute (Amended Petition, ECF No. 21, PageID 2815)(emphasis in original). In addition, she alleges that the "the state did not present any testimony of evidence regarding either the new theory and 'facts' submitted by the state on appeal . . ." *Id.*

"Respondent concludes that sufficiency of the evidence is the subject of Ground Four because Ogle argues that the trial court erred in not granting the defense motion for a finding of not guilty at the close of the state's presentation of evidence and Ogle's comment that the prosecution presented nothing more than a possible (emphasis in original) violation of Ohio law.

---

[4] As the portions of this claim pertaining to the court of appeals' consideration of alleged new facts is replicated by a stand-alone claim in Petitioner's Seventh Ground for Relief, it will accordingly be addressed in that ground.

[5] The second jury trial in August, 2011. The August 2010 jury trial resulted in a hung jury (Amended Petition, ECF No. 21, PageID 2815).

Doc. 21, Page ID#2814-2815." (Amended Return of Writ, ECF No. 30, PageID 3060-61.) Respondent rests on the arguments previously made in the first Return of Writ. *Id*. at 3061, citing ECF No. 14, PageID 1076-1093. In the first Return of Writ, Respondent acknowledges that this claim was properly raised in the state courts and as such as been preserved for merits review under the AEDPA (Return of Writ, ECF No. 12, PageID 1076). However, Respondent continues by asserting that the state court of appeals addressed Ogle's insufficiency of the evidence claim at length and Ogle cannot demonstrate merit under the *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), standard. *Id*. at PageID 1091. Furthermore, Respondent notes that it is the role of the jury as finders of fact to judge the credibility of witnesses, and in this case they chose to believe Woodeard's version of events. *Id*. at 1092.

On direct appeal the court of appeals held:

A.          Standard of Review

[*P23] An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Dennison*, 4th Dist. No. 06CA48, 2007 Ohio 4623, 2007 WL 2570736, ¶ 9. See, e.g. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

[*P24] A sufficiency of the evidence challenge tests whether the state's case is legally adequate to satisfy the requirement that it contains prima facie evidence of all elements of the charged offense. See *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983), and *Carter v. Estelle* (CA 5, 1982), 691 F.2d 777, 778. It is a test of legal adequacy, rather than a test

36

of rational persuasiveness. *Dennison*, supra at ¶ 10.

**[\*P25]** The standard of review for a Crim.R. 29(A) motion is generally the same as a challenge to the sufficiency of the evidence. *State v. Hollis*, 4th Dist. No. 09CA9, 2010 Ohio 3945, 2010 WL 3294327, ¶ 19; *State v. Hairston*, 4th Dist. No. 06CA3081, 2007 Ohio 3880, 2007 WL 2181535, at ¶ 16; *State v. Brooker*, 170 Ohio App.3d 570, 2007 Ohio 588, 868 N.E.2d 683, at ¶ 8. Appellate courts must determine whether the evidence adduced at trial, if believed, supports a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541(1997); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). In other words, when reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. " *Hollis*, ¶ 20, citing *State v. Smith*, 4th Dist. No. 06CA7, 2007 Ohio 502, 2007 WL 3557274, at ¶ 33, quoting *State v. Jenks* at paragraph two of the syllabus. See, also, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

**[\*P26]** The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence," *Hollis*, at ¶ 21; *Smith*, at ¶ 34, citing *State v. Martin*, 20 Ohio App. 3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983). Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith*, at ¶ 34, citing *State v. Thomas*, 70 Ohio St. 2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**[\*P27]** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Dennison*, supra at ¶ 11; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997), citing *State v. Martin*, supra, at 175. A reviewing court will not reverse a conviction where there is substantial evidence

upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Johnson*, 58 Ohio St. 3d 40, 41, 567 N.E.2d 266 (1991); *State v. Eskridge*, 38 Ohio St. 3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. We realize that the evidence may pass a sufficiency analysis and yet fail under a manifest weight of the evidence test. *Dennison*, supra at ¶ 15. See, *State v. Brooker*, 170 Ohio App.3d 570, 868 N.E.2d 683, 2007 Ohio 588, ¶ 16, citing *Thompkins*, supra.

B.          LEGAL ANALYSIS

[*P28] Appellant was convicted of assault on a peace officer, a violation of R.C. 2903.13(A)(C)(3)[FN6] which stated:

> (A) No person shall knowingly cause or attempt to cause physical harm to another...

> (C) Whoever violates this section is guilty of assault, and the court shall sentence the offender as provided in this division and divisions (C)(1), (2), (3), (4), (5), and (6) of this section. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree...

> (3) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.

> [FN6 The language quoted above is from the former version of R.C. 2903.13(A)(C), in effect at the time of Ogle's August 2011 trial. The statute has since been rewritten.]

[*P29] Appellant's contention that there was insufficient evidence to convict her of assaulting a peace officer is two-fold: she argues (1) there was no evidence that she "knowingly" attempted to cause physical harm to Woodgeard; and (2) Woodgeard did not meet the definition of "peace officer" as required by the statute. Upon examination of the evidence admitted at trial, we disagree with Appellant and find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

Was there sufficient evidence that Woodgeard acted as a "peace officer in performance of official duties" at the time of the alleged assault?

[*P30] We address Appellant's second argument under this assignment of error first, that Woodgeard did not meet the definition of "peace officer in performance of official duties" as required by statute. A "peace officer" includes a deputy sheriff. R.C. 2935.01(B). In *State v. Ford*, 12th Dist. No. CA2009-01-039, 2009 Ohio 6046, 2009 WL 3808374,¶ 53, the appellate court noted that "Ohio courts have held that peace officers have a continuing obligation to observe and enforce the laws of this state, even when they are off-duty and employed as private security detail. See, e.g., *State v. Glover*, 52 Ohio App.2d 35, 367 N.E.2d 1202 (10th Dist.1976); *State v. Underwood*, 132 Ohio Misc. 2d 1, 830 N.E.2d 1266, 2005 Ohio 2996; *State v. Hurley*, 4th Dist. No. 1292, 1986 Ohio App. LEXIS 9028, 1986 WL 12397 (Oct. 29, 1986). Appellant cites *State v. Duvall*, 11th Dist. No. 95-P-0140, 1997 Ohio App. LEXIS 2463, 1997 WL 360695, for the proposition that the absence of a written contract between AEP and the Hocking County Sheriff's Department distinguishes this case.

[*P31] In *Duvall*, the appellant was indicted for one count of felonious assault and one count of assault of a peace officer after allegedly assaulting police officers at a high school football game. The case indicated the officers contracted with the Brimfield School System to provide security. The officers were paid by the school system. Duvall's sole assignment of error was that the trial court erred in finding the officers were performing "official duties" as mandated by R.C. 2903.13(C)(3). The trial court previously held a peace officer was in performance of official duties when he is was performing duties of security or other law enforcement within his jurisdiction "regardless of who pays [him]." The appellant in *Duvall* urged the statute regarding assault on a peace officer applied only when the peace officer was "on duty" or "on the clock." The appellate court in *Duvall* held to determine what comprises a peace officer's "official duties" the court must look to the activities the peace officer was engaged in at the time he was assaulted. If the peace officer was engaged in a duty imposed upon him by statute, rule, regulation, ordinance or usage, regardless of his duty status, that officer is "in the performance of [his] official duties for purposes of R.C. 2903.13(C)(3)." The appellate court noted the sergeant involved was off-duty, being compensated for his monitoring services by the school system. The court also noted the officer was in uniform, in his territorial jurisdiction, and

performing a "peace-keeping" function as required of him by R. C. 737.11. [FN7]

> [FN7 R.C. 737.11 provides, generally, the duties of police and fire departments, are to preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, and all court orders issued, consent agreements, and protection orders issued pursuant to the Revised Code and courts of other states.]

[*P32] Although the *Duvall* court used the term "contracted," in its description of the relationship between the officer assaulted and the school system, we do not find the case's outcome hinged on this fact. In the case sub judice, Woodgeard and Sheriff North both testified Woodgeard was employed full-time by the Hocking County Sheriff's Department and he was working on Donaldson Road on the incident date at AEP's request to help keep the peace. Woodgeard and others testified Woodgeard was wearing an official uniform and using a sheriff's cruiser. We do not find the parties failure to have a written contract in place to be outcome determinative. We find from the testimony presented at trial any rational trier of fact could have found the State presented sufficient evidence Woodgeard met the definition of peace officer.

[*P33] We must next consider whether there was sufficient evidence to find beyond a reasonable doubt whether or not Woodgeard was in the performance of official duties. At trial, the court instructed the jurors as to the definition of what comprise a peace officer's official duties. The court also instructed deputy sheriffs are permitted under state law to work special duties and make arrests for crimes they believe to have occurred in their presence. We must consider the events which transpired on Donaldson Road, and then the ones which evolved on the Ogles' property.

[*P34] The Ogles' version of what happened on Donaldson Road is that they were honking, yelling, even cursing, but breaking no laws. They drove off because they felt Woodgeard was improperly trying to get into their vehicle. They denied hearing any commands or directives from Woodgeard. Woodgeard had no reason to follow them onto private property.

[*P35] Woodgeard's version of the scene at Donaldson Road is because of the Ogles' noisy display, he decided to investigate the

situation. He directed Appellant to calm down and she refused. He requested she step out of the vehicle and she did not comply. At that point, Woodgeard placed his hand on the truck door and the Ogles drove off at a high rate of speed. Jason Stacy corroborated this testimony, adding that Woodgeard repeatedly tried to calm Appellant and Stacy felt it was a threatening situation.

[*P36] On the Ogles' property, Appellant continued to be belligerent and charged at Woodgeard. Woodgeard testified just before Appellant kicked him, making contact, he informed her she was going to be arrested for disorderly conduct. R.C. 2917.11(A) disorderly conduct reads as follows, in pertinent part:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> (1) engage in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> (5) Creating a condition that is physically offensive to person or that presents a risk of physical harm to person or property, by any act that serves no lawful and reasonable purpose of the offender."

[*P37] The 2nd District Court of Appeals considered whether an officer had a reasonable basis to believe that a defendant had committed the offense of disorderly conduct in *State v. Ellis*, 2nd Dist. No. 24003, 2011 Ohio 2967, 2011 WL 2436939. There two defendants were arrested and tried together on charges of obstruction of official business, resisting arrest, and disorderly conduct. The confrontation between Ellis, another defendant Robinson-Williams, and Dayton police officers stemmed from Ellis's son's stop for a traffic violation and the officers' intent to tow the vehicle. Ellis and Robinson-Williams arrived at the scene

to prevent the car from being towed. Robinson-Williams began yelling, screaming, and cussing so an officer asked her to calm down. She began flailing her arms, continuing to yell and scream. The officer's testimony was corroborated by a second officer. The appellate court noted at ¶ 47:

> "[A] 'lawful arrest' for disorderly conduct occurs regardless of whether the alleged offender is ultimately convicted if the officer had reasonable grounds to believe that the accused was recklessly causing inconvenience, annoyance or alarm to him by abusive language, and that the individual's language and conduct was likely to provoke a violent response.***[T]he test is object and [the officer] need not in fact be inconvenienced, annoyed, or alarmed, or personally provoked to a violent response." *State v. Sansalone*, 71 Ohio App. 3d 284, 286, 593 N.E.2d 390 (1st Dist.1991); R.C. 2917.11 (disorderly conduct statute.) The question instead, focuses on whether, under the circumstances, it is probable that a reasonable police officer would find the accused's language and conduct annoying or alarming and would be provoked to want to respond violently." *Sansalone*, at 286 (Citation omitted.).

In deciding *Ellis*, the court held at ¶ 49:

> "[t]he jury reasonably could have believed the officers' testimony and found they had a reasonable basis to believe that Robinson-Williams was committing the offense of disorderly conduct. The jury could have found that a reasonable officer would find that the noise she was making and her offensive and coarse language were annoying, at the very least. Moreover, given Robinson-Williams' vocal opposition to the car being towed, the jury could have found that a reasonable officer would have been alarmed about what action she might take to stop it."

**[\*P38]** The "reasonable basis" language was also utilized in *State v. Glenn*, 2004 Ohio 1489, 2004 WL 595644, at ¶ 26, wherein the First District Court of Appeals considered whether the evidence

42

was sufficient to support defendant's conviction for assault on a peace officer, and ultimately concluded that it did. In *Glenn*, an altercation occurred between Glenn and a Hamilton County deputy sheriff at the Hamilton County Courthouse. Glenn was present in order to testify as a witness in his brother's trial. Glenn and a woman, another witness in the trial, clashed. A police officer intervened and sent Glenn and the woman separate ways. Shortly thereafter, the sheriff's deputy responded to another disturbance. The woman told the deputy that Glenn had verbally and physically assaulted her. The deputy approached Glenn to speak to him about the problem and Glenn became agitated and loudly complained about the woman. The deputy determined to let Glenn vent. Then the deputy told Glenn to avoid contact with the woman. Glenn told the deputy, "My taxpayer money paid for this courthouse. I can do and say whatever I want." The deputy testified Glenn was loud and angry. The deputy then decided to ask Glenn's name. Glenn complied but the deputy next asked for a social security number or an identification card. Glenn refused and would not cooperate. The deputy then asked Glenn why he was at the courthouse. From that point on, Glenn became further verbally abusive and ultimately threw his coat and hat on the floor, stepped close to the deputy and said "[Y]ou need to go ahead and arrest me, punk." The deputy began to arrest and handcuff Glenn. A scuffle ensued wherein Glenn kicked the deputy twice in the groin and bit his hand.

**[\*P39]** We conclude a jury could reasonably find Woodgeard was in the performance of official duties when he approached the Ogles' truck and tried to calm the situation. At least one witness testified to feeling, essentially, the Ogles' had created a threatening situation. After having been allowed to vent, Appellant refused to calm down. She refused to step out of the truck so Woodgeard could address the matter. After refusing to obey Woodgeard's command, the truck took off at a high rate of speed. These actions were observed by Woodgeard and others on Donaldson Road. Although Appellee and Appellant presented contrasting versions of the facts, it was the jury's determination as to which of the witnesses were more credible. Furthermore, the jury heard the CD evidence that Mr. Ogle admit Woodgeard directed Appellant to step out of the truck, although both Mr. and Mrs. Ogle denied hearing any orders and claimed Woodgeard was trying to get into their truck for no reason.

**[\*P40]** We are mindful the weight of evidence and credibility of witnesses are issues to be decided by the trier of fact. *State v. Dye*, 82 Ohio St. 3d 323, 329, 1998 Ohio 234, 695 N.E.2d 763 (1998); *State v. Frazier*, 73 Ohio St. 3d 323, 339, 1995 Ohio 235, 652 N.E.2d 1000 (1995); *State v. Williams*, 73 Ohio St. 3d 153, 165,

1995 Ohio 275, 652 N.E.2d 721 (1995); *State v. Vance*, 4th Dist. No. 03CA27, 2004 Ohio 5370, 2004 WL 2260498, ¶ 9. As such, the trier of fact is free to believe all, part or none of the testimony of each witness who appears before it. See *State v. Long*, 127 Ohio App. 3d 328, 335, 713 N.E.2d 1 (4th Dist. 1998); *State v. Nichols*, 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist. 1993); *State v. Harriston*, 63 Ohio App. 3d 58, 63, 577 N.E.2d 1144 (8th Dist. 1989); *Vance*, ¶ 9. We also acknowledge that the trier of fact is in a much better position than an appellate court to view witnesses and observe their demeanor, gestures, and voice inflections, and to use those observations to weigh the credibility of the testimony. See *Myers v. Garson*, 66 Ohio St. 3d 610, 615, 1993 Ohio 9, 614 N.E.2d 742 (1993); *Seasons Coal. Co. v. Cleveland*, 10 Ohio St. 3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984); *Vance*, ¶ 9. Here, the trial court properly instructed the jurors as to direct and circumstantial evidence, credibility of the witnesses, and reasonable doubt.

[*P41] We conclude a jury reasonably could have found Woodgeard had observed criminal activity on Donaldson road and therefore, was in the performance of his official duties when he followed the Ogles onto their property to continue attempting to calm the situation. As in the cited cases, given Appellant's refusal to calm down and obey the officer's direct command, it was reasonable for Woodgeard to believe Appellant might be rushing away to commence further threatening or violent action. As such, we believe sufficient evidence was presented at trial from which a reasonable jury could determine that Woodgeard was acting as a peace officer in performance of official duties at the time of his assault.

Was there sufficient evidence that Appellant acted "knowingly" when she allegedly assaulted Woodgeard

[*P42] We next address Appellant's argument that there was not sufficient evidence to convict her of "knowingly" committing an assault upon a peace officer. Appellant submits the State's case rested entire upon a claim by Woodgeard, a "rookie" officer on probationary status. Appellant points out that of the three people present during the altercation, only Woodgeard's version of the events differed. The Ogles put forth testimony at trial that, for no reason, Woodgeard followed them onto their property and pepper-sprayed first Appellant, as she was trying to go in her house and then her husband, as he tried to aid her. Mr. Ogle recalled that Appellant did "brush" Woodgeard's face with the papers. The Ogles' denied Appellant kicked at Woodgeard until after he

pepper-sprayed them. However, the CD evidence indicated the kick happened before the pepper-spraying and ensuing physical struggle. According to Woodgeard, he deployed the pepper spray only after she refused to calm down and kicked him in the genital area.

[*P43] It is apparent the jury believed Woodgeard's version of the events. We find the record contained sufficient evidence beyond a reasonable doubt the jury could have found Appellant acted "knowingly."

[*P44] The trial court instructed the jury as to the definition of "knowingly." "Knowingly" is defined in R.C. 2901.22 (B) as: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." The trial court also instructed that knowledge is determined from all the facts and circumstances in evidence.

[*P45] At trial, Appellant testified that after Woodgeard's unwarranted deploying of the pepper spray a first time, she stumbled around her yard, trying to get to the house. She testified she made a "conscious decision" to drop her purse, so that she could move away from him faster. She further testified she stumbled, and while she was looking down, saw Woodgeard's tan pants, knew it was him coming at her, and kicked out in order to protect herself. Appellant characterized the kick as a "reflex" action. Furthermore, Appellant testified she believed Woodgeard was going to tase her or "kill her."

[*P46] Again, the credibility of the witnesses is a determination for the jury. The jury may have found it self-serving to believe that Appellant made a conscious decision to drop her purse, but somehow the decision to kick at a uniformed police officer was not a conscious one. The jury may have found it incredible that Appellant could seriously believe she was risking imminent death. The jury apparently did not find Appellant's testimony persuasive. We find that a rational trier of fact could have found Appellant acted "knowingly" beyond a reasonable doubt. As such, we overrule assignment of error number one and affirm the judgment of the trial court.

[*P47] Additionally, because we review a denial of a motion for acquittal under Criminal Rule 29 under a "sufficiency of the evidence standard, we find the trial court did not err in overruling the motion made in this case. Appellant acknowledges she relies

on the same arguments set forth in her first assignment of error in claiming the trial court erred in denying her motion made at the conclusion of the State's case. Having considered the evidence under the "sufficiency" standard and finding no merit to Appellant's first assignment of error, we further find the trial court did not err with regard to its denial of her Crim. Rule 29 motion. As such, the second assignment of error is overruled and the judgment of the trial court is hereby affirmed.

[*P48] Finally, Appellant relies on the same contentions regarding Woodgeard's status as a peace officer, the alleged absence of criminal activity, and the characterization of her acts as self-defense in arguing her third assignment of error that the conviction is against the manifest weight of the evidence. Despite her assertions, we find Appellant's assignment of error as to "manifest weight" also fails. In making this finding, we have had to consider the same evidence previously discussed in resolution of Appellant's first and second assignments of error. Admittedly, the trial testimony boiled down to a "he said/she said" consideration. Appellant's testimony indicated she kicked at Woodgeard in self-defense after he followed her onto her property for no reason, chased her around the yard, and pepper-sprayed her for no reason. Woodgeard's testimony indicated Appellant was pepper-sprayed only after she refused to calm down, obey his orders, and kicked his genital area. It is obvious the jury did not find Appellant's version of the facts credible and instead relied on the evidence presented by the State's witnesses. For the jury to have done so is well within its province as trier of fact. And in doing so, we cannot find a manifest miscarriage of justice has occurred or the jury clearly lost its way. As such, we overrule Appellant's third assignment of error under this appellate case number and affirm the judgment of the trial court.

*Ogle*, 2013-Ohio-3420.

The state court applied the correct standard in considering Ogle's insufficient evidence claim. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved

beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship*, *supra*.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency

> determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam).

A habeas court cannot consider post-trial evidence in deciding a *Jackson v. Virginia* claim. *McDaniel v. Brown*, 558 U.S. 120 (2010).

> In order to demonstrate that the state court's decision was based on an unreasonable determination of the facts under § 2254(d)(2), a petitioner must both establish the "unreasonable determination" and show "that the resulting state court decision was 'based on' that unreasonable determination."

*Titlow v. Burt*, 680 F.3d 577, 585 (6th Cir. 2012)(rev'd on another issue *Burt v. Titlow*, 134 S. Ct.

10) *quoting Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

In order to consider the reasonableness of the state courts' determination, this Court turns toward the record before the trial court.  All parties agree that while blocked from the entrance of their driveway, the Ogles were honking the horn and yelling obscenities at the workers. (Tr. Testimony of Stacy, ECF No. 13-1, PageID 721, 735)("A horn being honked repetitively, you know, kind of an aggressive, . ."); *Id.* at 722 ("There was someone in the pickup truck that was very irate and was an aggressive, you know, threatening type manner trying to get out of the vehicle and cursing and screaming and the driver was trying to restrain them . . . I was kind of afraid to really turn my back at that point.  I didn't know what was going on or what was going to happen so - -"); (Tr. Testimony of Thompson, ECF No. 13-2, PageID 850)("I remember a horn being blowed (sic).  That's basically about it."); (Tr. Testimony of Woodgeard, ECF No. 13-2, PageID 775)("Horn honking- blaring.  I walked around the truck- Pike truck and observed Mr. and Mrs. Ogle parked in front of the AEP truck.  That's when Mrs. Ogle was jumping over Mr. Ogle, was blaring the horn, throwing her hands up in the air, yelling."); *Id.* at 777 ("I could hear a lot of commotion, a lot of screaming going on.  I couldn't basically make out what she was saying, but you can honestly tell it was upset person."); (Tr. Testimony of Charles Ogle, ECF No. 13-2, PageID 886-87)("Nobody made any effort to move the vehicles so at that point I rolled the window down and laid on the horn."); *Id.* at 867 ("And at that time my wife, she rolled down her window and she yelled out the window a couple times at them that day and she said you bastards have to right to be blocking the road, screaming that out the window at them a couple times."); *Id.* at 897-8 (told them to move their "fucking vehicles" . . . "Mrs. Ogle yelled out the window you bastards have no right to be blocking the road."  She also reaches across Mr. Ogle "once or twice and blows the horn after I'm done blowing the horn."); *Id.* at 908-909

(Impeachment evidence in which Mr. Ogle described Mrs. Ogle's behavior as "Okay, and we came home and she then she just liked flipped off and just started, you know, calling them bastards and blah, blah, blah, and - -" . . . ."Well, she seen (sic) them up here and she starts flipping out.  She kept, you know, yelling, screaming, calling them bastards, this and that and just blowing the horn at them and I mean I don't think there is any law against doing that, yelling, screaming and blowing the horn. . . ."); (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 929)(Charles Ogle rolled down window and started yelling at the workers. He was also honking the horn.  Melanie joined in with the yelling, "you bastards have no right to block the road. Just simple facts.")

   Further it is not contested that the officer approached the Ogle's truck in an effort to subdue the situation. (Tr. Testimony of Stacy, ECF No. 13-1, PageID at 725)("He [officer] had pointed at the passenger who was the female and told her at that point in so many words to calm down and to knock it off . . . .I want to say he went on the passenger side at the point again to try to calm her down and then at that point the truck sped off and they went around us and went down the driveway that was nearby."); (Tr. Testimony of Woodgeard, ECF No. 13-2, PageID 777-778)("When I go down there I walked around the passenger side.  That's when she - - I made direct eye contract with Mrs. Ogle and asked her to step outside so I can address the situation with her, maybe calm her down, see what was going on."); *Id.* at 778 ("She just looked at me and the windows rolled up, the doors got locked and she was looking at me and throwing her hands up on the air and just yelling.  I mean she didn't want to comply."); (Tr. Testimony of Charles Ogle, ECF No. 13-2, PageID 871-872)("And then the sheriff deputy came at us at a very quick - - what I quickly determined to be an aggressive pace towards us and as soon as he started

walking toward us, I rolled the windows up. . . .and the deputy came to my side of the truck and he said something to me.  I don't know what he said. I could hear him say something and at that point I really didn't care because I'm not doing anything wrong. . . . .); *Id.* at PageID 873 (Officer Woodgeard said something while outside the passenger door but he could not hear what was said); *Id.* at 909 ("so then, you know, Trent starts walking back through there and, you know, he starts telling her to get out of the vehicle, she's in the vehicle and I'm keeping her in the vehicle.  I told her no, you are not getting out and you know we just want to get through . . ."); (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 930)(office approaches the truck and she can see his mouth moving but she cannot hear him.)

It is likewise uncontested that Mr. Ogle drove off after being approached by Officer Woodgeard. (Tr. Testimony of Stacy, ECF No. 13-1, PageID at 725)("I want to say he went on the passenger side at the point again to try to calm her down and then at that point the truck sped off and they went around us and went down the driveway that was nearby."); (Tr. Testimony of Woodgeard, ECF No. 13-2, PageID 778)( the vehicle took off at a high rate of speed); (Tr. Testimony of Charles Ogle, ECF No. 13-2, PageID 874)("I just went ahead and drove off and made a right hand turn and went down the driveway to the house."); *Id.* at 910 (drove away from officer, "I just wanted to get her down to the house where I could get her calmed down. That's all I wanted to do"); (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 931 (Charles takes off in the truck and goes down the driveway.)

Finally, the parties agree that Mrs. Ogle failed to comply with the officer once the parties again met up in the driveway of the Ogle's home and that in the ensuing "tussle" Mrs. Ogle kicked out at Deputy Woodgeard. (Tr. Testimony of Woodgeard, ECF No. 13-2, PageID 780-

1)("After I stopped, I opened the door. Mrs. Ogle exited the passenger side door, came charging - - running after - - towards me.  She had papers in her hands.  At the time I opened the door and Mr. Ogle came out the driver's side and was trying to grab Mrs. Ogle by the arms.  She struggled to get away from him, came towards me with the papers in her hands, very irate, belligerent.  It was waiving the papers in my face. Was actually brushed me in the face with the papers"); *Id*. at 781 (described Mrs. Ogle as very irate and belligerent.  She would not comply); *Id*. at 783 ("Like I said, when she kicked me, I was in a lot of pain. That's when I shoved her away to get the threat away from me. . . . I shove her away. I end up deploying pepper spray to Mrs. Ogle."); *Id*. at 787 ("Mrs. Ogle is very belligerent.  You couldn't talk to her"); (Tr. Testimony of Charles Ogle, ECF No. 13-2, PageID 899)(exchange as follows: "A: the first thing he says is he points to Melanie and tells her to put her hands out.  Q: Okay. How does she respond?  A: She doesn't respond anything.  Q: Does she put her hands up?  A: No.  Q: Okay. What does she do instead? A: She has an Ohio Attorney General's Opinion and she holds it out and says this is why they are breaking the law."); *Id*. at 911 ("and so he starts grabbing at her trying to handcuff her.  . . . Okay, she didn't want to be handcuffed because she didn't do anything wrong. Okay, and so, you know, he grabs a hold of her and she kicks at him a couple times and then, you know, this happens."); (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 939-940) (She knew it was Woodgeard and was fearful and as she "was bent over and I just picked my leg up and I kicked in that direction.")

Based upon this, it was not unreasonable for the state courts to find, in viewing the trial testimony and exhibits in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Further,

deference is also given to appellate court's sufficiency determination as there is no basis to believe that decision was unreasonable.  Thus the state court decision is not an objectively unreasonable application of the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard.  Petitioner's Fourth Ground for Relief is without merit.

## Ground Five

> Petitioner was denied effective assistance of appellate counsel rising to Constitutional infringement under the Sixth and Fourteenth Amendments.

In her Fifth Ground for Relief, Ogle argues ineffective assistance of appellate counsel based upon the errors or omissions in the following eighteen sub-claims:

1) Error in the self-defense instruction

2) Jury instructions

3) Jury instructions as to 8 different constitutional rights that appear to be factually specific

4) Jury instruction on 12 issues of mixed fact and law

5) An argument that the trial court's instruction on Ohio law was incorrect as to when a peace officer is in the performance of his or her duties

6) Jury instruction to the effect that the court took a factual determination away from the jury when it instructed that a peace officer may work a special duty and still act in the performance of his or her duties

7) That the trial court erred when it determined as fact that the assault by the peace officer upon Ogle occurred during an arrest

8) The trial court misinterpreted Ohio law as to when a citizen may resist an arrest

9) Jury instruction on excessive or unnecessary force should have been expanded

10) Jury instruction on self-defense was defective as to the element of fault giving rise to the assault

11) Jury instruction (unclear but appears to argue that a clarification of the elements of the offense related to other circumstances)

12) Jury instruction on testimony of police officers

13) Appellate counsel failed to assign errors in sentencing

14) Appellate counsel failed to argue 8 specific errors pertaining to the evidence, prosecutorial misconduct, suborning perjury, misstatement in closing argument, withholding Dr. Sawyer's letter, prejudicial testimony about the victim's injuries, misrepresentation of the record prepared for sentencing, failure by the trial defense counsel to subpoena a witness who was a driver of a truck near to the scene prior to the assault on the peace officer pertaining to a question of whether a truck were blocking the Ogle's access to their property

15) Appellate counsel failed to investigate juror misconduct

16) Appellate counsel's failure to present ineffective assistance of trial defense counsel in that counsel did not challenge two jurors who had income at least in part from the company that was performing work on the Ogle's property or from law enforcement employment.

17) Appellate counsel failed to raise ineffective assistance of trial defense counsel for failing to offer evidence of the type and potency of the pepper-spray used in the case;

18) Appellate counsel failed to raise ineffective assistance of trial defense counsel for prosecutorial misconduct in argument.

(Amended Petition, ECF No. 21, PageID 2817-2825.)

Respondent counters that this ground is procedurally defaulted (Amended Return of Writ,

ECF No. 30, PageID 3061).   Petitioner's application under Ohio App. R. 26(B) was twice

procedurally defaulted as it was untimely filed and Ogle failed to appeal that decision to the Ohio

Supreme Court.   Further, she cannot demonstrate cause and prejudice as nothing in the

application would have had an effect on her finding of guilt, but rather involved inconsequential

instructional issues and two assignments of errors involving sentencing. *Id*. at PageID 3062.

Additionally, Respondent argues that this ground, as presented in Ogle's amended petition, bears "no semblance to her application in the state court notwithstanding some arguable minor similarities in detail." *Id*. at PageID 3062. Thus the claim is procedurally defaulted as it was never fairly presented to the state courts. Further, there is little likelihood that the state court would entertain another Application under Ohio App. R. 26(B) pertaining to appellate counsel. *Id*.

As previously stated, the standard for evaluating whether a claim is procedurally defaulted is set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit instructed that a court must first determine if there was a state procedural rule applicable to petitioner's claim and whether or not petitioner complied with that rule. The court must then decide whether the state court actually enforced the state procedural sanction and whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, the court may proceed in determining whether Petitioner has met his/her burden to show that there was a "cause" for him/her not to follow the adequate and independent state rule, and as a result his Constitutional rights were prejudiced. *Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002); *see also Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

Ogle filed a Motion for Leave to File delayed Applications to Reopen Case Numbers 11CA29, 12CA11, and 12CA12 (ECF No. 13, Exh. 19, PageID 403-417); (ECF No. 13, Exh. 25, PageID 658-660). Further, she filed an application to reopen case 11CA29 under Ohio App. R. 26(B) in which she raised three assignments of error:

Assignment of Error I:

The Court's jury instructions violated Defendant-Appellant's Rights to Due Process and a fair trial.

Assignment of Error II:

Defendant-Appellant's constitutional rights were violated during the September 27, 2011 sentencing hearing since she was unrepresented by counsel and did not waive her right to counsel.

Assignment of Error III:

The trial court erred by sanctioning Defendant-Appellant without first conducting a hearing on her ability to pay.

(ECF No. 13, Exh. 27, PageID 664-668.)

The Fourth Appellate District, Hocking County, denied Ogle's motion for leave to file delayed applications to reopen case numbers 11CA29, 12CA11, and 12CA12, as well as denied her above application to reopen appellate court case number 11CA29 (ECF No. 13, Exh. 29, PageID 676-78). The entry held:

An application for reopening must be filed 'within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App. R. 26(B)(1). Ogle filed her motions for leave to file a delayed application to reopen on the 89th day, i.e. within the time period for filing a timely application to reopen. These motions sought additional time to file her applications to reopen but did not include any assignments of error that she asserts should have been raised by appellate counsel or a sworn statement of the basis for her claim that appellate counsel's representation was deficient as mandated by App. R. 26(B)(2). Ogle could, instead, have simply filed a timely application to reopen her appeal.

Ogle filed her more recent application to reopen appellate court Case No. 11CA29 approximately 11 months after this Court issued the decision and judgment entry affirming her convictions. Ogle contends that her application is untimely because, during the 90 days after this Court's decision, she attempted to file a notice of appeal with the Supreme Court of Ohio. This is inaccurate. Ogle did not attempt to file her appeal to the Supreme Court of Ohio

> until well past the 90 day deadline for filing an application to
> reopen her appeal and waited until more than three months had
> passed from the dismissal of her appeal to the Supreme Court.
>
> We find that Ogle has not demonstrated good cause to permit the
> filing of late applications to reopen her appeal. . . .

*Id.* at PageID 677-78.

It is without question that the state had a procedural rule applicable to petitioner's claim and that she failed to comply with that rule.  "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012).  Ohio App. R. 26(B) became effective in 1993, years before Ogle filed her motion.  Further, Ohio App. R. 26(B)(1) states that the motion must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  Despite filing her motion for a delayed application to reopen within the prescribed timeframe, she did not supply the proper supporting evidence, nor did she file any of her actual application to reopen within the 90 days.

Next this Court must decide whether the state court enforced the state procedural sanction and whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.  As stated above, the state court did in fact rely on and enforce the state procedural rule of timeliness.  In turning to whether it was based on an adequate and independent state ground, the Court notes that "a procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *citing Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998); *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)(indicating that

whether a state procedural rule is firmly established and regularly followed for procedural default purposes is determined by looking at the rule as of the date it was applied to the petitioner's case by the state court.)  Since 1996, "Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B)," and "'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012), *quoting Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010) (*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)).  Ogle filed her motions in 2011 and 2012 respectively.  Thus, at the time of the filing of her motion for reconsideration, Rule 26(B) was an adequate and independent ground on which to find procedural default. *Id.*; *see also Parker v. Bagley*, 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Finally, the court may proceed in determining whether Petitioner has met his/her burden to show that there was a "cause" for him/her not to follow the adequate and independent state rule, and as a result his Constitutional rights were prejudiced. *Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley*, 492 F.3d 347 (2007).  Ohio law has provided "sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B) . . ." *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012), *quoting Hoffner*, 622 F.3d at 504-05 (*quoting Parker*, 543 F.3d at 861).  Further, the Ohio Supreme Court has held that good cause can excuse the lack of a filing only while it exists, not for an indefinite period of time. *State v. Fox*,  83 Ohio St. 3d 514 (1998).  Ogle argued she had good cause as she attempted to file a notice of appeal with the Supreme Court of Ohio during the 90 days after the court of appeals' decision.  The state court found that

this was an inaccurate statement and that Ogle did not attempt to file her appeal to the Supreme Court of Ohio until well past the 90 day deadline.  Ogle has done little more to show good cause before this Court.  As such, Ogle cannot demonstrate good cause.

Further, this Court agrees with Respondent's contention that the majority of these sub-claims were not fairly presented to the state court.  If a petitioner's claims in federal habeas rest upon different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001).  A petitioner only fairly presents a federal habeas claim to the state courts if she "asserted both the factual and legal basis for his claim." *Hicks v. Straub*, 377 F.3d 538 (6th Cir. 2004), *citing McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276-78 (1971).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks* at 552-53, *citing McMeans*, 228 F.3d at 681.  A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).  For the reasons set forth above, this Ground for Relief is procedurally defaulted in its entirety.

In an effort to excuse the procedural default, Petitioner argues that she meets the actual innocence gateway under *Schlup v. Delo*, 513 U.S. 298, 324 (1995)(Traverse, ECF No. 40, PageID 3144); (*see also* Motion to Expand Record Regarding Actual Innocence New Evidence Shlup Gateway, ECF No. 20 and Motion to Expand the Record ECF No. 50).

The Supreme Court has recognized actual innocence as excusing procedural default in presenting a claim to the state courts. *Murray v. Carrier*, 477 U.S. 478 (1986).  The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019, 1035 (2013).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception."  The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

The Supreme Court complicated the analysis of introducing additional evidence in *Cullen v. Pinholster,* 563 U.S. 170 (2011). The Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 182. The Supreme Court further stated that section 2254(e)(2) only "continues to have force where Section 2254(d)(1) does not bar federal habeas relief." *Id.* at 185.

> In [*Pinholster*], the petitioner argued that his penalty phase attorney was ineffective because that attorney failed to introduce mitigating evidence of mental disorders. [*Pinholster,*] 131 S.Ct. at 1396. In denying the petition, the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. The Supreme Court further stated that section 2254(e)(2) only "continues to have force where

61

Section 2254(d)(1) does not bar federal habeas relief." *Id.* at 1401. The Supreme Court explained this holding, stating that Section 2254(d) only governs claims that were adjudicated on the merits in state court whereas Section 2254(e)(2)'s limit on habeas discovery "restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Id.* [*Pinholster*] indicates that the Court cannot now consider the contents of outside discovery in determining if the decision of the state court was an "unreasonable application of [ ] clearly established federal law," so long as the state court ruling was made on the merits. 28 U.S.C. § 2254(d)(1). FN1

> FN1. The plain language of 28 U.S.C. § 2254(d)(2) also limits the Court's review to of [sic] "the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); [*Cullen*]. 131 S.Ct. at 1400 n. 7. Thus, under both Section[s] of 2254(d), the Court may not consider outside evidence unless the petitioner did not already litigate the issue on the merits.

*Trimble v. Bobby,* No. 5:10-CV-00149, 2011 WL 1527323 at *2 (N.D Ohio, Apr. 19, 2011). Stated differently, pursuant to *Pinholster,* under 28 U.S.C. §§ 2254(d)(1), when addressing a claim that was adjudicated on the merits by the state court, the habeas court's review is limited to the record that was before the state court. *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013); *Bray v. Andrews,* 640 F.3d 731, 737 (6th Cir. 2011). And pursuant to the *Trimble* court's analysis with which this Court agrees, *Pinholster* applies with equal force to 28 U.S.C. § 2254(d)(2) claims. *Trimble,* 2011 WL 1527323 at *2 n.1. Further, the limitations in *Pinholster* apply to expansion of the record as well as to evidentiary hearings. *Moore v. Mitchell*, 708 F.3d 760, 780-784 (6th Cir. 2013).

However, "[a] claim of actual innocence offered to excuse procedural default is not a substantive claim for habeas corpus relief, but a "gateway" claim and therefore not subject to the *Pinholster* restrictions." *Pettus-Brown v. Warden*, 2015 U.S. Dist. LEXIS 11884, *2 (S.D. Ohio 2015). "*Pinholster* does not by its own terms apply to the actual innocence exception to either

procedural default or the statute of limitations." *Clemmons v. Warden*, 2012 U.S. Dist. LEXIS 146029, *19 (S.D. Ohio 2012).

> While neither the Supreme Court nor the Sixth Circuit have yet resolved the issue, lower courts that have addressed the question have unanimously held that *Pinholster's* limitation on new evidence does not apply to claims of actual innocence, especially when it is used to excuse a procedural default of another claim. *See, e.g., Clemmons v. Warden, Lebanon Correctional Institution*, No. 11-465, 2012 U.S. Dist. LEXIS 146029, 2012 WL 4811122, at *8 (S.D. Ohio, Oct. 10, 2012) ("*Pinholster* does not by its own terms apply to the actual innocence exception to . . . procedural default . . . . The premise of the actual innocence exception is that the habeas petition is presenting new evidence not considered by the state courts."); *Pettus-Brown v. Warden, Correctional Reception Center*, No. 14-292, 2015 U.S. Dist. LEXIS 11884, 2015 WL 422557, at *1 (S.D. Ohio, Feb. 2, 2015) ("A claim of actual innocence offered to excuse procedural default is not a substantive claim for habeas relief but a 'gateway' claim and therefore not subject to the *Pinholster* restrictions."); *Washington v. Beard*, 07-3462, 2012 U.S. Dist. LEXIS 42764, 2012 WL 1033526, at *4 (E.D. Pa. Mar. 28, 2012) (finding that *Pinholster* did not bar a federal court from considering new evidence supporting a freestanding actual innocence claim that had not been decided on the merits in the state courts or a gateway actual innocence claim); *High v. Nevens*, No. 11-00891, 2013 U.S. Dist. LEXIS 45580, 2013 WL 1292694, at *9 (D. Nev. Mar. 29, 2013) ("The rule in *Pinholster* of course has no bearing whatsoever on . . . non-merits factual development, under *Schlup* or otherwise."); *Hazel v. Warden, Chillicothe Correctional Institution*, No. 13-332, 2014 U.S. Dist. LEXIS 113597, 2014 WL 4076152, at *25 (S.D. Ohio, Aug. 15, 2014) ("*Pinholster* does not prevent the Court from considering newly tendered evidence on a claim of actual innocence.").

*Vinson v. Mackie*, 2016 U.S. Dist. LEXIS 154630, *2-3 (E.D. Mich 2016).

Therefore, this Court may consider new evidence for purposes of determining whether Ogle has met the threshold for the *Schlup* actual innocence gateway.

Petitioner attached purported *Schlup* evidence to her Amended Petition for Writ of Habeas Corpus (ECF No. 21). In addition, on multiple occasions, Petitioner moved to expand

the record with new evidence to support her actual innocence claim (Motion to Expand the Record, ECF No. 20); (Motion to Expand the Record, ECF No. 38); (Motion to Expand the Record, ECF No. 39); (Motion to Expand the Record, ECF No. 50); (Objections, ECF No. 54); (Objections, ECF No. 60)  The new evidence sought to be introduced was for the purpose of demonstrating that the prosecution witnesses made inconsistent and contradictory statements and that Ogle was wrongfully convicted on false and/or perjured testimony.  In response to these efforts to expand the record, this Court has found the motions to be without merit.

In its first Decision and Order, the Court addressed the evidence sought to be admitted by Petitioner and articulated why, pled as such, the motion was deficient:

> However, she has merely created a list of exhibits without relating to them to any theory or narrative of actual innocence.  For example, she lists the September 9, 2009, "voluntary statement of Jason Stacy" (ECF No. 15-13, PageID 2729) as "necessary for re: veracity of claims and support of new reliable and material impeachment evidence."  When one examines that statement and assuming the female passenger referred to is the Petitioner, the statement does nothing to exonerate Petitioner, at least without some explanation of that connection.

(ECF No. 34, PageID 3100.)

In a later Decision and Order the Court noted that the evidence lacked the scientific basis necessary to be permitted under *Schlup*:

> The limitations in *Pinholster* apply to expansion of the record as well as to evidentiary hearings. *Moore v. Mitchell*, 708 F.3d 760, 780-784 (6th Cir. 2013). Therefore none of the proposed additions to the record can be considered in determining whether the state courts, in deciding Ms. Ogle's claims, violated 28 U.S.C. § 2254(d). Moreover, none of the proposed additional evidence meets the strict evidentiary standards of *Schlup*. None of it is new scientific or physical evidence or the testimony of eyewitnesses to the alleged offense. *Id* at PageID 2498.

(ECF No. 53, PageID 3489); (*see also* Supplemental Opinion on Evidentiary Hearing and

Expansion of Record, ECF No. 57; Second Supplemental Opinion on Evidentiary Hearing and

Expansion of Record, ECF No. 63.)

The decisions of the Magistrate Judge were affirmed and Petitioner's objections

overruled.

> The Magistrate Judge denied Petitioner's request for an evidentiary
> hearing and to expand the record, concluding that an evidentiary
> hearing is not required to resolve Petitioner's claims, and that the
> documents with which she seeks to expand the record do not meet
> the threshold for establishing a claim of actual innocence under
> *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The Magistrate Judge
> further notes that *Cullen v. Pinholster*, 563 U.S. 170 (2011),
> prohibits this Court's consideration of evidence not presented to
> the state courts in adjudicating Petitioner's claims.

(Opinion and Order, ECF No. 64, PageID 3593.)

In making its determination, the Court cited to the state appellate court's decision

denying Petitioner's motion for new trial which was supported with the same new evidence Ogle

sought to introduce in this Court to show actual innocence.

> **[\*P3]** The facts relevant to this appeal are as follows. Appellant's
> criminal trial took place in August 2011. Deputy Trent Woodgeard
> of the Hocking County Sheriff's Department testified Appellant
> kicked him in the groin area during a scuffle on Appellant's
> property. Woodgeard testified the kick took place when Appellant
> and he were standing between a black SUV and the Ogles' pickup
> truck. [FN 1 In our previously reference opinion of the
> consolidated appeal, we found Woodgeard to be in the
> performance of official duties as a peace officer during the assault.
> Ogle, supra at ¶ 39.]

> **[\*P4]** During trial, the State also offered a recorded statement of
> Appellant's husband, Charles Ogle, taken by Sgt. Kevin Groves of
> the Hocking County Sheriff's Department shortly after the assault
> occurred. The trial court ruled against the State's request to use the
> statement. However, after Charles Ogle testified on behalf of the
> defense and made contradictory statements, the trial court allowed
> the recording to be played for impeachment purposes. Charles
> Ogle further acknowledged "the audio was correct as a whole."

[*P5] Since Appellant's felony conviction, she has filed a separate civil proceeding in federal court styled *Charles R. Ogle, et al., v. Hocking County, et al*., Case No. 10CV00806, United States District Court, S.D.E.D. For the federal court case, Deputy Woodgeard testified in deposition on December 12, 2012. In his deposition testimony, he testified to the events occurring before, during, and after Appellant kicked him. Specifically Woodgeard testified Appellant kicked him while both parties were on the driver's side of the SUV.

[*P6] Appellant's current appeal stems from the denial of a January 28, 2013 Crim.R. 33(B) motion for leave. Appellant' motion for leave argued she was unavoidably prevented from discovering new evidence that Deputy Woodgeard and Sergeant Groves perjured themselves at her criminal trial. Appellant contends Woodgeard's trial testimony about the location of where he was kicked differed from the location he testified to in his 2012 deposition. Appellant argues this differing testimony was newly discovered information not disclosed to her prior to her August 2011 trial. Appellant attached a copy of Woodgeard's deposition testimony to her motion for leave. [FN2 Woodgeard's federal court deposition testimony was attached to the motion for leave. The record does not indicate the deposition was filed with the court by either Appellant or the court reporter taking the deposition. Civil Rule 32(A) provides "Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or made part of the record before us."

[*P7] Appellant also contends Sgt. Kevin Groves committed perjury in her criminal trial. She attached personnel records of Sgt. Groves to her motion. The records indicate Groves was disciplined by the Hocking County Sheriff on September 24, 2012, pursuant to an internal investigation. Appellant argues Groves' misconduct and lying in two separate cases in 2012 (not related to hers) is also newly discovered information which was unavailable to her at the time of her trial.

(Opinion and Order, ECF No. 64, 3596-97, *citing State v. Ogle*, 2013-Ohio-3770 (4th App. Dist. 2013)).

"To establish actual innocence, a habeas petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at PageID 3599, *quoting Schlup*, 513 U.S. at 327. "Examples of evidence which may establish

factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. 298, and exculpatory scientific evidence." *Id*. "If new evidence so requires, this may include consideration of 'the credibility of the witnesses presented at trial.'" *Id*., *quoting House v. Bell*, 547 U.S. 518, 538-39 (2006). However, the Court continued on to note that the mere existence of impeaching evidence does not warrant a new trial. *Id*. at 3600, *citing Dell v. Straub*, 194 F. Supp. 2d 629, 657 (E.D. Mich. 2002). Nor does "a petitioner's renewed attacks on credibility of a trial witness" provide proof of actual innocence. *Id*., *citing In Re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001). "The Supreme Court has noted that such 'latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heard of [the witness'] account of petitioner's actions.'" *Id*., *quoting Clark v. Lewis*, 1 F.3d 814, 824 (9th Cir. 1993)(*citing Sawyer*, 505 U.S. at 349.) Thus it follows that impeachment evidence provides very little basis for a finding of a miscarriage of justice. *Id*., *quoting United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1110 (C. D. Cal. 1998)(*quoting Calderon v. Thompson*, 523 U.S. 538, 563 (1998)).

The District Court concluded that what

> Petitioner seeks to offer- much of which was available or could have been obtained at trial or is collateral to the issue of her guilt of the offense charged - - demonstrating that prosecution witnesses made inconsistent statements at trial, or new information of similar substance obtained from subsequent litigation, evidence of criminal charges or misconduct of prosecution witnesses unrelated to the criminal case, and the proposed testimony of an expert witness offered to undermine the credibility of evidence submitted at trial. Her allegation that the prosecution withheld such critical evidence establishing her innocence is without record support. Further, and contrary to Petitioner's argument here none of the evidence she refers to supports her allegations of collusion and perjury.

*Id*. at PageID 3601-02.

As a result of the Court's prior rulings on Ogle's Motions to Expand the Record, the only 'new evidence' that not yet been taken into account and denied is that attached to her Amended Petition. Again the evidence goes to false testimony and collusion. This new evidence is not of the sort envisioned by *Schlup* in that it is neither exculpatory scientific evidence, trustworthy eyewitness accounts, nor critical physical evidence. As summarized by Chief Judge Sargus in his Opinion and Order, the evidence is the same sort sought to be introduced in her multiple motions to expand "demonstrating that prosecution witnesses made inconsistent statements at trial, or new information of similar substance obtained from subsequent litigation, evidence of criminal charges or misconduct of prosecution witnesses unrelated to the criminal case, and the proposed testimony of an expert witness offered to undermine the credibility of evidence submitted at trial." Most, if not all, of this new evidence was in fact available or could have been obtained at trial or is collateral to the issue of her guilt of the offense charged. Additional new evidence is made up solely of allegations with no factual evidence in support, i.e.- the woman that told Petitioner, but cannot publically come forward because of her safety, that Woodgeard hit her during their romantic relationship. For these reasons the new evidence attached to Ogle's Amended Petitioner is not sufficient to meet the actual innocence gateway of *Schlup* and overcome Petitioner's procedural default in the state courts. Ground Five should therefore be dismissed.

**Ground Six**

68

> The jury instructions were so improper, erroneous and ambiguous, including a lack of Constitutional rights instructions, as to have misled the jury in matters materially affecting Petitioner's substantial rights rising to a Constitutional infringement, and Petitioner was prejudiced by defense counsel's failures to request or object to instructions that affected Petitioner's substantial rights.

In her Sixth Ground for Relief, Ogle alleges that her constitutional rights were violated on the basis of improper jury instructions (Amended Petition, ECF No. 21, PageID 2827). Specifically, she argues that there is a reasonable likelihood that the jury misapplied the instructions in a way that relieved the State of its burden of having to prove every element of the offense beyond a reasonable doubt. *Id.*

Respondent argues that this claim is both procedurally defaulted, and alternatively is not cognizable in habeas (ECF No. 30, PageID 3075-3076).

The Court notes the multitude of sub-claims contained within Petitioner's Sixth Ground for Relief.  Ogle advances jury instruction error from the following omissions or alleged misstatements of law:

- The instructions did not advise the jurors that a finding of self-defense did not have to be unanimous (Amended Petition, ECF No. 21, PageID 2827).

- Petitioner was entitled to believe that when providing her testimony "about an act other than the act that the alleged victim claimed occurred that she would not be providing the jury with evidence to prove an element of the count charged" against her. *Id.*

- Petitioner argues Constitutional error arising from the trial court's failure to instruct the jury that: she was free to ignore Deputy Woodgeard and was not required to submit to a consensual encounter; she did not acquiesce or comply to Woodgeard's request, that she was free to be driven away from the deputy by her husband, that she had a right to be free of pursuit without exigent circumstances or probable cause, she had a constitutional right not to be subjected to arrest or seizure without probable cause, she had a right not to be subjected to unlawful arrest or seizure and to not be subjected to unprovoked assault and battery, and finally that she had a right to walk

away from the deputy. *Id*. at PageID 2828.

- The trial court's instruction that "while working special duty, in uniform, deputies who are making an arrest for crimes they believe to have occurred in their presence, are acting as a peace officer in the performance of their official duties. . . ." is an incorrect statement of law. *Id*. at PageID 2829-2830.

- The portion of the court's instructions, "while working special duty" took that element out of the jury's fact finding and instead informed the jurors that Woodgeard was in fact working special duty, thus giving him a lawful and official presence. *Id*. at PageID 2830-31.

- The trial court's instructions decided for the jurors that the alleged assault occurred during an arrest, rather than allowing the jury to decide whether this was a case of resisting arrest or an unprovoked attack by Deputy Woodgeard. *Id*. at PageID 2831.

- The trial court instructed "a citizen does not have the legal right to resist an arrest by one she has reason to believe is a peace officer in the performance of his duties, whether or not the arrest is legal under the circumstances, unless the peace officer used excessive and/or unnecessary force in perfecting the arrest.  Thus a person cannot resist any arrest, legal or illegal unless the officer uses excessive and/or unnecessary force." *Id*. at PageID 2831.  Yet the court failed to define "excessive" and/or "unnecessary." *Id*.

- The trial court instructed the jurors that to prove self-defense, Petitioner had to prove that she was not "at fault in creating this situation giving rise to the assault" without instructions to determine if this was an actual arrest or unprovoked attack by Woodgeard, since a person cannot be at "fault" or "create" a situation for which she is being assaulted or unlawfully arrested. *Id*. at PageID 2832.

- The trial court did not instruct the jurors on the separation of time and space, where multiple alleged acts could have constituted assault. *Id*. at PageID 2832.

- The trial court did not give instructions that the testimony of a police officer is to be judged by the same standards applicable to other witnesses. *Id*. at  PageID 2832.

- The court of appeals violated Petitioner's Constitutional rights when the court affirmed on "the basis of a theory and under different instructions than was ever presented to the jury. . . . when it determined the necessary element of the alleged crime, "peace officer while in the performance of their official duties." *Id*. at PageID 2832.

This ground was not fairly presented to the state courts.  Ogle's only objection at trial

was directed to the court's instruction on the question of whether a person could resist an illegal

arrest or if the officer uses excessive or unnecessary force (See Return of Writ, ECF No. 30, PageID 3076 citing Tr., ECF No. 13-2, PageID 1006-1007).  With that exception, Ogle failed to object to the instructions given or omission of instructions at the time of trial.

States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90 (1977).  Ohio is no exception, with a strong procedural preference that parties preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, as set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

Because of her failure to raise a contemporaneous objection, these sub-claims have been procedurally defaulted.[6]  Under Ohio law, if an appellant could have made an objection to a ruling at trial but failed to do so, the appellant has waived appellate review of the challenge. *State v. Murphy*, 91 Ohio St. 3d 516 ( 2001).  Issues that have been waived in this manner are only subject to plain error review. *Id*. at 789; Ohio Crim. Proc. R. 52.  Further, Ohio's contemporaneous objection rule has been found to be an adequate and independent state ground which the courts have consistently enforced. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982); *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir.

---

[6] With the exception of her one objection to "illegal arrest," which she failed to renew on appeal.

2003); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Riggins v. McMackin*, 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009). In addition to failing to raise these claims during trial, Ogle failed to raise these claims during her numerous direct appeals and post-conviction relief proceedings, presenting them only in her Motion to Reopen direct appeal (See Traverse, ECF No. 40, PageID 3145); (See also Expansion of Record, ECF No. 46 listing assignments of errors in appellate case numbers 11CA32, 12CA2, 12CA19, 13CA9 and attaching the memorandum thereto).

Ogle's sole method of bringing these claims before the state court was in her Ohio App. 26(b) Motion to Reopen. However, as discussed above, her Motion was untimely. Even if it had been properly filed, claims of ineffective assistance of appellate counsel are based on an analytically distinct legal theory from the underlying claims and the 26(B) application does not preserve the underlying claims from default. *Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014); *Davie v. Mitchell*, 547 F.3d 297 (6th Cir. 2008)(Rogers, J.), and *Garner v. Mitchell*, 502 F.3d 394 (6th Cir. 2007)(Moore, J.), both citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Moore v. Mitchell*, 531 F. Supp. 2d 845, 862 (S.D. Ohio 2008)(Dlott, J.); *see also Bailey v. Nagle*, 172 F.3d 1299, 1309 n.8 (11th Cir. 1999); and *Levasseur v. Pepe*, 70 F.3d 187, 191-92 (1st

Cir. 1995).  As such, the underlying jury instruction sub-claims were never properly before the state courts for consideration, and as such are now procedurally defaulted for purposes of habeas review.

Alternatively, this claim is without merit.  Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Habeas relief may be available however, where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008), *cert denied*, 129 S. Ct. 1991 (2009).  "State law errors may warrant habeas relief if the errors 'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (2010), *quoting Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations. *See Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose*, 527 F.2d 524 (6th Cir. 1975).  When the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not

cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

In relevant portions, the trial court instructed:

> The defendant is charged with one count of assault and before you can find her guilty, you must find that the State of Ohio has proved beyond a reasonable doubt that on or about the 9th day of September, 2009, in Hocking County, that the defendant knowingly caused or attempted to cause physical harm to Trent Woodgeard, a peace officer while in the performance of his official duties.
>
>        ***
>
> Now as I previously told you it is alleged by the state that the victim of the assault, Trent Woodgeard, at the time of the assault was a peace officer in the performance of his official duties.
>
> A peace officer means a sheriff, deputy sheriff, marshal, deputy marshal, member of organized police department of a municipal corporation or a township constable who is employed by political subdivision of the state or an officer, agent or employee of the state or any of the agencies, instrumentalities, or political subdivisions upon which by statute a duty to conserve the peace or o enforce all or certain laws as imposed and the authority to arrest violators is conferred within the limits of that statutory duty and authority.
>
> In performance of his duties.  In determining what comprises a peace officer's official duties the focus must be on the activities in which a peace officer was engaged in at the time he was allegedly assaulted.  If the peace officer was engaged in a duty imposed upon him by statute, rule or regulation, ordinance or usage, regardless of his duty status, that officer is in the performance of his official duties.
>
> Deputy sheriffs are permitted under state law to work special duty as authorized by their superiors.  While working special duty in uniform, deputies who are making an arrest for crimes they believe to have occurred in their presence are acting as peace officers in the performance of their official duties.
>
> If you find that the state has proved each and every one of the elements of the charge of assault beyond a reasonable doubt, you must then consider the defense of self-defense.  If you find that the

state has failed to prove any one of the essential elements of the charge of assault beyond a reasonable doubt, then you must find the defendant not guilty.

\*\*\*

A citizen does not have the legal right to resist an arrest by one she has reason to believe is a peace officer in the performance of his duties whether or not the arrest is legal under the circumstances unless the police officer uses excessive and/or unnecessary force in perfecting the arrest. Thus a person cannot resist an arrest legal or illegal unless the officer uses excessive and/or unnecessary force.

If you find that the defendant assaulted Trent Woodgeard on the date and time in question, then you can consider the defendant's claim that she did so in self-defense. Self defense if proven is a defense to the charge of assault.

(Tr., ECF No. 13-2, PageID 994-998.)

The state appellate court was not given the opportunity to address any questions relating to the jury instructions. However, it did address the definition of the phrases "peace officer" and "in the performance of official duties" upon consideration of Ogle's sufficiency of the evidence claim. The court addressed the terms solely under Ohio law, specifically Ohio Revised Code §§ 2935.01(B) and 737.11. *Ogle*, 2013-Ohio-3420, ¶¶ 29-33, 39. Ohio Revised Code § 2935.01(B) defines "Peace officer as "a sheriff; deputy sheriff; marshal; deputy marshal; member of the organized police department of any municipal corporation . . ." Ohio Revised Code § 737.11 lists the general duties of the police departments as that "of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, all court orders issued and consent agreements approved pursuant to sections 2919.26 and 3113.31 of the Revised Code, all protection orders issued pursuant to section 2903.213 or 2903.214 of the Revised Code, and protection orders issued by courts of another state, as defined

in section 2919.27 of the Revised Code."

As demonstrated above, the trial court and the court of appeals addressed the terms consistent with their state statutory definitions. Ogle has not demonstrated error arising to the "level of a denial of rights protected by the United States Constitution." This Court defers to the state courts interpretation of its own law. The Sixth Ground for Relief is both procedurally defaulted and without merit.

### Ground Seven

> The appellate court considered a new theory (and by the state's specificity in its brief, a new fact) first presented on appeal, and relied upon the same and/or its own theory and non-existent "facts", which had not been before the jury, contrary to clearly established federal law; and failed to reconcile the state's hard evidence with state's sole key eyewitness testimony, rising to a Constitutional infringement against Petitioner.

In her Seventh Ground for Relief Ogle contends that the appellate court improperly relied upon non-existent facts and a new theory when making its decision, resulting in a violation of her constitutional rights (Amended Petition, ECF No. 21, PageID 2834). Specifically, the court misstated three "facts" regarding the testimony of defense witnesses to support the notion that that information contradicted the testimony of Charles Ogle. *Id*. In addition, it considered other non-existent facts that had not been before the jury to support

> [T]he state's new theory of an arrestable misdemeanor crime having occurred on Donaldson Road. to establish a necessary element of the alleged crime, and appellate court's own theory that

> Woodgeard witnessed threatening and violent action, which
> required his pursuit of Petitioner . .

*Id.*

Respondent argues that this ground is without merit (Amended Return of Writ, ECF No. 30, PageID 3078). Petitioner is attempting to rebut the presumption of correctness of the state court's determination. *Id.* However the AEDPA requires the federal court to presume the correctness of a state court's factual findings unless a petitioner rebuts this presumption by clear and convincing evidence. *Id.* at PageID 3079.

Petitioner does not respond directly to Respondent's arguments in her Traverse, but rather cites to the sufficient evidence standard of *Jackson v. Virginia* and again reiterates her earlier argument that the state court's determination was unreasonable given the facts before it (Traverse, ECF No. 40, PageID 3141-3).

The appellate court's "fact" statements being contested are:

1) "The officer said something Mr. Ogle could not hear"; "On the CD, Mr. Ogle states Woodgeard told Petitioner to get out of the vehicle, which contradicts his testimony that he could not hear what the officer said"; and "Furthermore, the jury heard the CD evidence that Mr. Ogle admit[ted] Woodgeard directed Petitioner to step out of the truck, although both Mr. and Mrs. Ogle denied hearing any orders."

2) "Soon Woodgeard was walking towards them with handcuffs, while Appellant was walking towards Woodgeard, waving papers in his face"; "Mr. Ogle recalled that Petitioner did 'brush' Woodgeard's face with the papers."

3) "The Ogles' denied Petitioner kicked at Woodgeard until after he pepper-sprayed them. However, the CD evidence indicated the kick happened before the pepper-spraying and ensuing physical struggle."

4) "Woodgeard testified that he 'asked [Petitioner] to step outside', a request for petitioner to engage in a consensual encounter in the middle of a public roadway, therefore, the appellate court's statements that on Donaldson Road, Petitioner 'refus[ed] to calm down and obey the officer's direct commend', and 'After refusing to obey Woodgeard's command, the truck took off at a high rate of speed' are absolute misstatements of the state's testimony, and a non-existent 'fact' which gave prejudicial deference to the state to prove sufficient evidence of an element: . . ."

(Amended Petition, ECF No. 21, PageID 2835-7.)

All of Petitioner's allegations of misconstrued and non-existent facts go to the various inconsistencies between the parties' versions of events.  The first statement addresses the credibility of Mr. Ogle when he stated that he could not hear the officer give a command to get out of the truck. *See State v. Ogle*, 2013-Ohio-3420, ¶¶ 11, 19-20, 34-35.  Mr. Ogle testified that he knew Woodgeard was saying something but he did not pay attention to what the officer was trying to communicate.  "And then the sheriff deputy came at us at a very quick - - what I quickly determined to be an aggressive pace towards us and as soon as he started walking toward us, I rolled the windows up. . . . and the deputy came to my side of the truck and he said something to me.  I don't know what he said. I could hear him say something and at that point I really didn't care because I'm not doing anything wrong. . . ." (Tr. Testimony of Charles Ogle, ECF No. 13-2, PageID 871-872); *Id.* at PageID 873 (Officer Woodgeard said something while outside the passenger door but he could not hear what was said); *see also* (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 930)(officer approaches the truck and she can see his mouth moving but she cannot hear him); *Id.* at PageID 954-955 ("Obeying?  What commands because the deputy never told me to do anything, so I'm not sure what we're talking about here.")

Mr. Ogle, however, had previously given a statement to Sergeant Groves in which he stated he had heard Officer Woodgeard's request.  At trial Charles Ogle was not only cross-examined with the prior inconsistent statement, but an audio recording of the statement was played before the jury.  His previous statement recounted the event as "so then, you know, Trent [Officer Woodgeard] starts walking back through there and, you know, he starts telling her to get

out of the vehicle, she's in the vehicle and I'm keeping her in the vehicle. I told her no, you are not getting out and you know we just want to get through . . ." *Id*. at PageID 909. Further, other witnesses testified to the command. (Tr. Testimony of Stacy, ECF No. 13-1, PageID 725)("He [the officer] had pointed at the passenger who was the female and told her at that point in so many words to calm down and to knock it off . . . ."); (Tr. Testimony of Woodgeard, ECF No. 13-2, PageID 777-778)("When I go down there I walked around the passenger side. That's when she - - I made direct eye contract with Mrs. Ogle and asked her to step outside so I can address the situation with her, maybe calm her down, see what was going on . . . She just looked at me and the windows rolled up, the doors got locked and she was looking at me and throwing her hands up on the air and just yelling. I mean she didn't want to comply.")

The second "fact" goes to whether Mrs. Ogle acted knowingly when she assaulted the peace officer. *See State v. Ogle*, 2013-Ohio-3420, ¶¶ 12, 19, 21. Ogle argues that neither she nor her husband testified that she approached Woodgeard waving papers in his face. Mr. Ogle actually testified that his wife had a couple pieces of paper that she held out during the encounter (ECF No. 13-2, PageID 786-879, 797). He testified that as Woodgeard began to walk toward Ms. Ogle she held out a couple pieces of paper, the Ohio Attorney General's Opinion, and stated "this is why they are breaking the law blocking the road." *Id*. at PageID 879, 899. Likewise, Melanie Ogle stated that she was simply holding the papers in her hand to show the officer (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 933).

Woodgeard, however, did testify: "After I stopped, I opened the door. Mrs. Ogle exited the passenger side door, came charging - - running after - - towards me. She had papers in her hands. At the time I opened the door and Mr. Ogle came out the driver's side and was trying to

grab Mrs. Ogle by the arms.  She struggled to get away from him, came towards me with the papers in her hands, very irate, belligerent.  It [sic] was waving the papers in my face.  Was actually brushed me in the face with the papers." (ECF No. 13-2, PageID 780-1; *see also* PageID 810.)

In the third alleged misstatement of fact, Ogle denies that she kicked out at Woodgeard until after he had pepper sprayed her. *See State v. Ogle*, 2013-Ohio-3420, ¶¶ 12-13.  Melanie testified that she had been pepper sprayed and was trying to get into the house when she saw someone wearing a dark shirt and tan pants approach (Tr. Testimony of Melanie Ogle, ECF No. 13-2, PageID 939-940).  She knew it was Woodgeard and was fearful and as she "was bent over and I just picked my leg up and I kicked in that direction." *Id*.  Later she testified that she may have been kicking but she could not recall as she was under "full effect of mace at that point." *Id*. at 944.

Charles Ogle testified as to the chronology of events as follows, "We were getting close to the end of the sidewalk at this point, he [Officer Woodgeard] reached down and the next thing I know he pulls his pepper spray out - - what I assumed to be pepper spray canister at that time . . . he jerked her around and shot her point blank in the face with the pepper spray." (ECF No. 13-2, PageID 879-880.)  He further stated that after Ms. Ogle was sprayed, she and the officer "tusseled around." *Id*. at 881.  It was during this time that Petitioner kicked the officer.  "My wife was there and she was standing up and she had her hands over her face trying to wipe her face from this burning pepper spray . . . she sees him coming and she kicks out at him and I believe she made contact with him, she kicks out at him." *Id*. at 882.  "She kicked in the general direction of the officer. She was trying to get to the house.  She had her hands up at her face, and

you know,  . . . she was on her feet and she kicked in the direction of that officer as he was coming back at her right before he slammed her to the ground and then she probably kicked at him when he had her on the ground." *Id*. at 894.

However, the cd testimony indicated that Mr. Ogle believed the kick happened before the pepper spraying. *Id*. at 911. "And so he starts grabbing at her trying to handcuff her. . . . Okay, she didn't want to be handcuffed because she didn't do anything wrong.  Okay, and so, you know, he grabs ahold of her and she kicks at him a couple times and then, you know, this happens." *Id*.; (But see ECF No. 13-2, PageID 916)(Charles Ogle claiming that portions were left out of the recorded statement as due to his almost "disillusioned" state, he failed to give several key details during his statement to Groves, such as the deployment of pepper spray.)

Again, Woodgeard disagreed with the Ogles' versions of this event. "Like I said, when she kicked me, I was in a lot of pain. That's when I shoved her away to get the threat away from me. . . . I shove her away. I end up deploying pepper spray to Mrs. Ogle." (ECF No. 13-2, PageID 783.)

Ohio courts have repeatedly recognized that the jury is in the best position to judge the credibility of witnesses because it "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Rojas v. Warden, Ross Corr. Inst.*, 2014 U.S. Dist. LEXIS 181998, *59 (N.D. Ohio Dec. 11, 2014), *citing Rojas*, 2013-Ohio-1835 at Paragraph 55; *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30, *quoting Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659, 626 N.E.2d 1017 (8th Dist. 1993); *State v. Yarbrough*, 95 Ohio St. 3d 227, 2002-Ohio-2126, ¶ 79 (2002).  The trier of fact "may believe or disbelieve any witness or accept part of what a witness

81

says and reject the rest.  In reaching its verdict, the jury should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the defendant, and his interest, if any in the outcome." *State v. Swiger*, 5 Ohio St. 2d 151, 156 (1966), *quoting State v. Antill*, 176 Ohio St. 61, 67 (1964).  "The testimony of one witness, although it may be contradicted by another, is sufficient to prove a fact if the trier of facts finds that witness more credible." *State v. Dean*, 146 Ohio St. 3d 106, 2015-Ohio-4347, ¶¶ 176-177 (2015), *quoting State v. Dawson*, 2009-Ohio-2331, ¶ 33 (5th App. Dist. 2009).  On appeal

> The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence," *Hollis*, at ¶ 21; *Smith*, at ¶ 34, citing *State v. Martin*, 20 Ohio App. 3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983). Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith*, at ¶ 34, citing *State v. Thomas*, 70 Ohio St. 2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

*Ogle*, 2013-Ohio-3420, ¶ 26.

Thus, **when an appellate court** applies the standard of review for sufficiency of the evidence, they must view the evidence in a light most favorable to the State, and determine if any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Darling*, 2009-Ohio-4198, ¶ 38 (8th App. Dist. 2009).

Great deference is due to state court credibility determinations. *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011), *citing Felkner v. Jackson*, 562 U.S. 594 (2011).  A habeas court may not substitute its own determination of guilt or innocence for that of the jury**,** nor weigh the credibility of the witnesses. *Rojas v. Warden, Ross Corr. Inst.*, 2014 U.S. Dist. LEXIS 181998, *63 (N.D. Ohio Dec. 11, 2014).  Under the AEDPA "for a federal habeas court to overturn a

state court's credibility judgments, the state court's error must be stark and clear." *Otte v. Houk*, 654 F.3d 594 (6th Cir. 2011), *quoting Larry v. Branker*, 552 F.3d 356, 370 (4th Cir. 2009).

Here, the jury, as the trier of fact, was in the best position to resolve conflicts in testimony, weigh evidence, assess credibility, and draw reasonable inferences from basic facts to ultimate facts. The jury simply made a determination that Office Woodgeard's testimony was more credible than that of Mr. and Ms. Ogle. Likewise, the state court of appeals, in viewing the evidence in a light most favorable to the state, found that the testimony of Woodgeard and those that testified on his behalf, was sufficient that any rational trier of fact could have found the essential elements beyond a reasonable doubt. Ms. Ogle has not made any argument on this claim, more or less of a clear and convincing nature, to rebut the state court's determination.

Further, the Court finds that the court of appeals did not err when it made mention of Mr. Ogle's prior inconsistent statements made to Sergeant Groves. *Ogle*, 2013-Ohio-3420, ¶¶ 14, 20, 39. As stated by the trial court, the audio recording of that statement was admitted as impeachment evidence. As such it was properly before the jury to help in their assessment of the witness' credibility. *Id*. at ¶ 40. The state court of appeals noted that it was used for such, and that counsel was permitted redirect after the cross-examination and introduction of the inconsistent statements. *Id*. at ¶¶ 20, 40.

Finally, Petitioner alleges that the court of appeals' characterization that she refused to calm down and obey the officer's direct command was incorrect in that the officer never gave a command but rather made a request (Amended Return, ECF No. 30, PageID 3082). Petitioner's makes the argument that Woodgeard's use of the word "asked" in his trial testimony "I made direct eye contact with Mrs. Ogle and asked her to step outside . . ." was merely a request of her to step outside the vehicle to "engage in a consensual encounter," rather than a command with

which she must comply.  This argument is without merit.  As this Court notes, despite the differences in tone that "request" and "command" may imply, it is clear from reading the state court of appeals opinion that the court was using these terms interchangeably. *See Ogle*, 2013-Ohio-3420, ¶ 4 ("Appellant and her husband failed to comply with requests"); *Id*. at ¶ 22 ("Appellant testified she never heard Woodgeard give directions or make commands"); *Id*. at 34 ("They denied hearing any commands or directives from Woodgeard"); *Id*. at 35 ("He requested she step out of the vehicle and she did not comply"); *Id*. at 39 ("after refusing to obey Woodgeard's command, the truck took off at a high rate of speed"); *Id*. at 41 ("Given Appellant's refusal to calm down and obey the officer's direct command, it was reasonable . . .").

As for what Woodgeard intended when he used the word "asked" in his recitation of events, as previously stated, the jury as the trier of fact was in the best position to judge the credibility of witnesses because it "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  Additionally, the court of appeals considered the sufficiency of the evidence in their review of this case.  Mrs. Ogle has not offered any evidence, much less to the level needed to overcome the deference given state court credibility determinations by habeas courts, that Officer Woodgeard was simply making pleasantries or requesting her presence at an encounter on the side of Donaldson Road.  This Ground for Relief is without merit in its entirety.

**Ground Eight**

84

> New evidence of juror misconduct and juror non-disclosure rise to Constitutional infringement of Petitioner's due process rights to a fair and impartial jury trial, and cause and prejudice prevents Petitioner from exhausting any possible state court remedy regarding the same.

In her Eighth Ground for Relief, Petitioner argues that her constitutional rights were violated when new evidence of juror misconduct was discovered (Amended Petition, ECF No. 21, PageID 2839).  Specifically, she alleges that it was discovered that jurors in her criminal case had relied on a rumor that was not actual evidence presented to them and further allegations that a juror had lied on his jury questionnaire prior to being seated on her jury. *Id.*

The Respondent answers that despite Petitioner's citation to the state court of appeals' decision, he is unable to find any mention of juror misconduct in his reading of *State v. Ogle* (Amended Return, ECF No. 30, PageID 3084).  As such, it was the initial belief of Respondent that this ground is either unexhausted or procedurally defaulted because it was never fairly presented to the state courts. *Id.*  However, in their Response to Petitioner's Motion to Stay and Abey the habeas case, Respondent took the position that not only is there no unexhausted claim before this Court, but that Petitioner's motion does not describe such a claim (Response, ECF No. 77, PageID 3659).  Further, Respondent opines that Petitioner fails to meet the standard under *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005) in demonstrating that if there were in fact an unexhausted claim, that she had good cause in failing to raise the claim at the proper time, or that the claim would have any merit. *Id.* at 3660.

Petitioner does not address the element of exhaustion in her Traverse but rather asserts that her actual innocence under *Schlup v. Delo* serves as an excuse for her procedural default on

this claim (Traverse, ECF No. 40, PageID 3146).  Ogle states that she has provided the Court with numerous documents, some of which relates to a separate litigation with the Kroger Corporation as a result of Ogle being banned from the stores.  The documents contain a deposition of a juror (Williams) from Ogle's criminal trial who happened to work at one of the Kroger stores in question. *Id.*  During that deposition Ogle learned that at the time of this trial Williams believed that the Deputy Woodgeard could no longer father children as a result of his injury. *Id.*  Williams maintained that she learned this fact from evidence presented at trial, however Ogle notes that there was never a mention of such impact from the injury. *Id.*  Further, Williams admitted during deposition that she had considered this false information during deliberations. *Id.*  Ogle argues that "no clearer evidence of jury misconduct can be found.  This is not a shadowy audio tape of this juror.  She has stated, under oath, that she believed the Deputy could not have children." *Id.*

Ogle previously sought on multiple occasions to expand the record (See ECF Nos. 20, 38, 39).  She argues that the evidence, specifically an affidavit of Juror Williams as well as the deposition transcript of Williams (both in Hocking County Court of Common Pleas case number 12-cv-0222) is "necessary to determine if extraneous information was known by one or more jurors that denied Petitioner a fair trial, and to determine if appellate counsel was ineffective for failure to investigate juror misconduct regarding the extraneous information, the same extraneous information as testified to by juror Williams in the referenced exhibit and presented in Petitioner's post-trial motion." (Pro Se Motion, ECF No. 20, PageID 2782, 2787.)  Further, Petitioner referenced evidence pertaining to Juror White in her pro se motion to expand record and for evidentiary hearing on the premise that it is "necessary to determine if appellate counsel

was ineffective for failure to investigate non-disclosure and prejudice to Petitioner for a fair trial re: juror White's criminal record and level of education." (ECF No. 20, PageID 2782, 2787.) However, the need for this evidence was not presented in her later Motion to Expand the State Court Record, nor her Supplemental Motion to Expand Record, as submitted by counsel (ECF No. 38, 39).

Petitioner then sought a hearing before this Court under *Remmer v. United States*, 347 U.S. 227 (1954) (Motion for *Remmer* Hearing, ECF No. 66).  *Remmer* stated "in a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer*, 347 U.S. 227, syllabus.  Therefore, "when it is alleged that some private contact with a juror happened after the jury was sworn and before it returned a verdict, the trial court that is supervising the jury must conduct a hearing to determine whether the contact was harmless." (Decision and Order on *Remmer* Hearing, ECF No. 68, PageID 3628.)

This Court held in the *Remmer* Hearing Decision and Order that Ogle has not made a showing that the evidence from this particular juror's deposition in the Kroger case was ever brought to the attention of Judge Dale Crawford, the judge who presided over her criminal trial. *Id*.  Further, the juror's deposition testimony appears to be largely in response to leading questions asked by Ms. Ogle and is "very equivocal as [to] any extraneous communication with the jury." *Id*. at PageID 3629.  Rather, as iterated in the Decision and Order Denying *Remmer* Hearing, while Ogle did file a "Motion for Leave to and Amendment to Rule 33 Motion; Request for

Hearing and Protective Order" in the Hocking County Common Pleas Court, she did not comply with Ohio R. Crim. P. 33(C) in providing the proper documentation (an affidavit) (ECF No. 68, PageID 3630). As such, Judge Crawford denied her motion and noted the absence of an affidavit to support the claim of juror misconduct. Further he reminded Ogle of the *aliunde* rule codified in Ohio R. Evid. 606(B). The rule states that "the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence . . . . from some other source." *Doan v. Brigano*, 237 F.3d 722, 730 (6th Cir. 2001), *quoting State v. Adams*, 141 Ohio St. 423 (1943). This "rule is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." *Doan*, 237 F.3d at 730, *quoting State v. Schiebel*, 55 Ohio St. 3d 71 (1990); *see also Monroe v. Warden*, 2014 U.S. Dist. LEXIS 135337, *8 (S.D. Ohio 2014), *quoting Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) ("There is no 'constitutional impediment to enforcing Ohio's *aliunde* rule.'")

Ogle then filed with the state court an application to reopen under Ohio R. App. P. 26(B) (See ECF No. 68, PageID 3630). Yet, in her motion, she failed to include any claim as to Judge Crawford's ruling on juror misconduct. *Id*. Thus, Ms. Ogle has procedurally defaulted this claim. *Id*.

Ogle filed with this Court a "Motion to Hold Habeas Petition in Abeyance" (ECF No. 76) to allow her to return to state court to present new evidence discovered from witness testimony in *Ogles v. Woodgeard (fka North, et al.)*, USDC, SD Ohio, Case No. 2:10cv806. *Id*. at PageID 3656.

Respondent opposed this motion (ECF No. 77). The Court denied the motion on the basis that Ogle failed to show her "Amended Petition was 'mixed' in the sense of containing any

unexhausted claims, any merit to any hypothetical unexhausted claim, or any state court forum in which that claim might be heard. . . " (Amended Decision, ECF No. 81, PageID 3687). "As the Amended Decision emphasizes, stay and abeyance is available only for unexhausted claims, not for the presentation of new evidence on exhausted claims." (Supplemental Opinion, ECF No. 84, PageID 3704, *citing Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016)).

The Court now turns to Ogle's claim of actual innocence gateway recognized under *Schlup v. Delo*, 513 U.S. 298, 324 (1995) as a defense to overcome the procedural default (Reply, ECF No. 8, PageID 2317-21).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter*, 395 F.3d at 590.

To satisfy the new evidence requirement of *Schlup*, Ogle presented to this Court her own Affidavit as well as evidence of juror Williams obtained in Hocking County Court of Common

Pleas case (ECF No. 8, PageID 2341-43); (Pro Se Motion, ECF No. 20, PageID 2782, 2787).

Ogle fails to meet the high standard under *Schlup*.  Despite her assertion that she was subjected to a false arrest and excessive force at no time did she deny kicking in the direction of the officer. So the case does not turn on whether or not she did in fact kick officer Woodgeard, but rather whether or not the arrest was proper and whether excessive force was used on the part of the officer.  Even considering Ogle's affidavit in conjunction with the Williams evidence in the Hocking County case, it does not present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.  For this reason Ogle fails to make the required showing of actual innocence to be permitted to proceed despite the procedural default. See also Analysis of *Schlup*, *supra* Fifth Ground for Relief.

**Conclusion**

For the reasons set forth herein, it is recommended that Ogle's Petition for Writ of Habeas Corpus be denied with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 10, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).