# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MELANIE A. OGLE,

        Petitioner,            :       Case No. 2:15-cv-776

  - vs -                                 Chief Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Michael R. Merz

GARY C. MOHR, DIRECTOR,
 Ohio Department of Rehabilitation
 And Correction,

                                   :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court on Petitioner's Objections (ECF No. 93) to the Magistrate Judge's Report and Recommendations ("Report," ECF No. 89). The Respondent has timely replied to the Objections (ECF No. 98) and Chief Judge Sargus has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 96).

# Analysis

**First Objection: Incorrect Procedural History**

The Report begins with the relevant procedural history of this case including the facts as recited by the state court of appeals (ECF No. 89, PageID 3732-39). Petitioner's Objections

1

begin with eleven pages of disagreement with this statement of procedural history (Objections, ECF No. 91, PageID 3827-37).

The first paragraph of the Procedural History reads: "Petitioner, Melanie Ogle, was indicted on September 28, 2009, by a Hocking County Grand Jury on one count for assault on a peace officer. Petitioner, pro se, entered a plea of not guilty. Ogle then obtained counsel and the case proceeded to trial." (ECF No. 89, PageID 3722.)

Ms. Ogle objects that an accurate procedural history would read instead:

> Petitioner first specifically objects to the accuracy of the first "Procedural History" paragraph, as the record in this case should reflect the trial court record, that the Hocking County Prosecuting Attorney procured the indictment against Petitioner, "the case proceeded to trial" on August 3. 2010, and that on August 5. 2010, a hung jury was declared. After that trial, the Hocking County Common Pleas Court Judge recused himself when an issue arose that he had recently been involved in the marriage ceremony of one of the assistant prosecutors who had participated in that trial. The Hocking County Prosecuting Attorney filed a notice to re-try Petitioner, then personally selected a special prosecutor, before recusing herself from the case for conflict of interest. On August 9, 2011, "the case proceeded to trial" a second time, with an assigned retired judge from Franklin County presiding. After the first trial and during the second trial against Petitioner, the Hocking County Prosecuting Attorney was a defendant and counsel for other defendants in *Ogles v. the Hocking County Sheriff and Hocking County Prosecuting Attorney* in Hocking County Common Pleas Court, Case No. 10CV0224 (alleging criminal trespass conspiracy in September, October, November and December of 2009 and the case was settled while on appeal in January, 2015); and civil rights claims were pending against Ohio Power (dba AEP), the Hocking County Sheriff, and his deputy, Trent Woodgeard, who was the alleged victim represented by the state as referenced in this habeas case, and against whom a jury trial proceeded on certain claims on January 27, 2015 in USDC, SD Ohio, Case No. 2:10cv806 (wherein Woodgeard and a *star* witness employed by AEP refuted Petitioner and her husband's testimony, and both of the testimonies provided new contradictory "facts" to the "facts" the two witnesses swore were true when they testified against Petitioner in the state court trial against her for assault).

(Objections, ECF No. 91, PageID 3827-28.)

There are several difficulties with this Objection. First of all, the Report's statement is true: the filed state court record establishes that the Indictment in this case was indeed returned on September 20, 2009 (ECF No. 13, PageID 124). The Magistrate Judge has no record reference for the not guilty plea, but Ms. Ogle does not dispute that she pleaded not guilty. A jury trial took place in August 2011. *Id.* at PageID 129. Thus the facts in the first paragraph of the Procedural History are either proven by record reference or not disputed by Petitioner.

As against this thirty-nine word, three-sentence paragraph supported by the record, Ms. Ogle proffers a procedural history of three hundred twelve words for which she provides **not a single record reference**. In the Order for Answer in this case, the Court ordered

> Before filing the answer, the Respondent shall file those portions of the state court record needed to adjudicate this case, accompanied by an index of the documents in the record. When the record is filed electronically, the Court's CM/ECF filing system will affix a unique PageID number to each page of the record, displayed in the upper right-hand corner of the page. All papers filed in the case thereafter, by either party, including the answer and the exhibit index, shall include record references to the PageID number.

(ECF No. 4, PageID 62.) The State of Ohio complied with this Order when it filed the state court record. However, this portion of the Objections does not comply with that Order. The Court cannot tell what support Ms. Ogle intends to adduce for the statements made in her proposed substitute first paragraph of the Procedural History. If the proof is in the filed state court record, it should have been referenced as required. If the evidence is not in the state court record, where is it?

Next the Report contains a lengthy quotation from the decision of the Ohio Fourth District Court of Appeals on direct appeal of this case (ECF No. 89, PageID 3733-38, quoting *State v. Ogle*, 2013-Ohio-3420, 2013 Ohio App. LEXIS 3510 (4th Dist. Jul. 26, 2013.)

Ogle objects to the sentence in ¶ 2 of the Fourth District decision which reads "Ogle and Ohio Power Company have been engaged in civil litigation over the last several years. The disputes began with Ohio Power's desire to construct a telecommunications tower and obtain an easement through the Ogles' property." She asserts that the State did not submit any facts which support this statement and "the Magistrate Judge, inappropriately relied on the same, inappropriately recited the same, and gave no reason for inclusion of the non-evidence in his R&R, . . ." (ECF No. 91, PageID 3828-29).

The statement objected to appears in the Fourth District's opinion with the following footnote:

> [FN2] The details of the continuing litigation are set forth in the following cases: *Ogle v. Ohio Power Co.*, 180 Ohio App. 3d 44, 2008 Ohio 7042, 903 N.E. 2d 1284; *Ohio Power Co. v. Ogle*, 4th Dist. Nos. 09CA1 & 09AP1, 2009 Ohio 5953; *Ohio Power v. Ogle*, 4th Dist. Nos. 10CA143, 10AP13, 2011 Ohio 3903; *Citizen of Hocking County v. Ohio Power Company*, 4th Dist. No. 11CA24, 2012 Ohio 4985; *Ogle v. Hocking Cty. Sheriff*, 4th Dist. No. 11AP13, 2012 Ohio 1768; and *Ogle v. Ohio Power Co.*, 4th Dist. No. 11CA27, 2012 Ohio 4986.]

(Quoted at Report, ECF No. 89, PageID 3733.) The reader will note that every referenced decision is a prior case in the Fourth District. An Ohio court of appeals may take judicial notice of the records in one of its prior cases even to satisfy the need to prove prior conviction in a weapons under disability case, even though judicial notice was not requested at the trial court level. *State v. Raymond*, 2008-Ohio-6814, 2008 Ohio App. LEXIS 5713, ¶¶ 5-21 (Ohio App. 10th Dist. 2008), found to be constitutionally sufficient in *Raymond v. Sheets*, 2012 U.S. Dist. LEXIS

160374 (S.D. Ohio Nov. 8, 2012), adopted 2013 U.S. Dist. LEXIS 22991 (S.D. Ohio 2013). The court of appeals committed no error, much less constitutional error, in referring to its prior decisions. The Magistrate Judge did not rely on any of the facts in those prior cases (and has not in fact read them). The language in question was quoted to give the full context of the holdings of the Fourth District.

Passing on to ¶ 3 of the Fourth District opinion, Ms. Ogle objects to the statement that, on the date of the offense, "access to the Ogles' driveway was blocked by <u>three</u> trucks." (ECF No. 91, PageID 3829.) Petitioner then spends five pages of her Objections attempting to show that it was two trucks rather than three and where they were in the roadway. *Id.* at PageID 3829-33. She relies on apparent inconsistencies in the testimony of Deputy Woodgeard between the first trial, which ended in a hung jury, and the second trial. *Id.*

28 U.S.C. § 2254(d)(2) allows a federal habeas court to set aside a state conviction if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The statute does not permit habeas relief if a petitioner can prove some error in a factual determination made by the state courts, but only if she or he can prove that the unreasonable determination of facts was the basis of the state court determination. In other words, the factual error must be material to the ultimate decision of the case.

Ms. Ogle's point about the power company trucks appears from the Objections to be that the drivers of those trucks were not cited for "blocking Donaldson Road and the Ogles' private driveway," (ECF No. 91, PageID 3833), regardless of whether it was two trucks or three. She does not dispute and indeed reiterates the factual finding of the Fourth District that the trucks were blocking her driveway. Whether it was two trucks or three was immaterial to the court of

5

appeals' decision.

Ms. Ogle next objects to ¶ 4 of the Fourth District's opinion (ECF No. 91, PageID 3833-36), claiming it has been "rebutted by Petition as inaccurate, based on the state trial court record." *Id.* citing ECF No. 24, PageID 3002. Petitioner objects to the Fourth District's finding that Deputy Woodgeard testified he made "requests" of Petitioner and her husband. To dispute the accuracy of this finding, Ms. Ogle quotes Deputy Woodgeard's testimony that he "asked" Ms. Ogle to step out of the truck. To "ask" and to "make a request" are synonymous in the English language. There is no error at all in the Fourth District's finding about this portion of Woodgeard's testimony.

Ms. Ogle next objects to the factual finding in the same ¶ 4 that "the Ogles evaded Woodgeard and drove into their driveway." (ECF No. 91, PageID 3834.) Her objection is that the record shows she was not driving. Of course only one of the Ogles was driving and the record shows it was Petitioner's husband. However, the testimony as a whole about what happened during the confrontation on Donaldson Road shows the Ogles were acting in concert. The very next sentence of the opinion supports an admission by the Ogles to that effect: "They testified they drove away because the officer was trying to get into their vehicle and they had done nothing wrong." *State v. Ogle*, *supra*, ¶ 4.

Petitioner relies on a stipulation made during the January 2015 trial of their federal case against Deputy Woodgeard to the effect that they had a right to drive away from Woodgeard and enter their property (ECF No. 91, PageID 3834). However, that stipulation was not part of the record before the Fourth District Court of Appeals.[1] Nor is Ms. Ogle's source of proof of the stipulation before this Court because the document with which she filed it was stricken (See ECF Nos. 15 and 17).

---

[1] Indeed it could not have been since it was made more than a year after the court of appeals' decision was entered.

Petitioner then objects generally to the inclusion in the Report of ¶¶ 6 through 21 of the Fourth District's opinion (ECF No. 91, PageID 3836). She claims that she has rebutted all the factual findings in these paragraphs by clear and convincing evidence. *Id.* citing ECF No. 24, PageID 3005-3018. That document is "Petitioner's Rebuttal to the Presumption of Correctness of State Court Findings of Fact Pursuant to 28 U.S.C. § 2254(e)(1). . ." *Id.* at PageID 2992. The fourteen pages cited generally in the Objections are a lengthy discussion of omissions from the Fourth District's summary of the trial testimony, particularly of perceived inconsistencies between the testimony of different witnesses or of the same witnesses at the two different trials.

A recommended instruction to federal juries on the credibility of witnesses reminds them that

> Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses, may or may not cause you to discredit such testimony. However, you should remember that two or more persons witnessing the same incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

O'Malley, Grenig, Lee Federal Jury Practice and Instructions, § 15.01 (6th Ed. 2008). We regularly instruct juries in this way because resolution of discrepancies or inconsistencies in testimony is a necessary part of the jury's function in crediting or discrediting witnesses and thus arriving at a verdict.

Here the jury heard somewhat conflicting testimony about the alleged criminal act – assault on a peace officer – but all three eyewitnesses –Mr. & Mrs. Ogle and Deputy Woodgeard – testified at the very least that she kicked in his direction. Petitioner testified "[s]he didn't know

7

if she made contact with him" and her husband testified "I believe she made contact." *State v. Ogle*, *supra*, ¶¶ 20-21. Those are the operative facts of the criminal offense and Petitioner makes no effort to show the courts of appeals is incorrect in its recitation of that testimony.

Petitioner objects to the statement in the Report (ECF No. 89, PageID 3738) that she filed several separate appeals pro se. She admits that she filed the Notices of Appeal pro se but that attorneys filed briefs in those cases on her behalf (Objections, ECF No. 91, PageID 3837). The Objections prove the Report is accurate: a litigant files an appeal by filing a notice of appeal, not by filing the brief.

**Ground for Relief One: Denial of Counsel at Sentencing**

In her First Ground for Relief, Ms. Ogle claims she was denied counsel at sentencing. The Report found this claim had been procedurally defaulted by not presenting it on direct appeal to the Fourth District and also that it was without merit (Report, ECF No. 89, PageID 3743-48).

Petitioner makes no response to the procedural default analysis in the Report which is by itself an adequate basis for dismissing Ground One with prejudice.

Ms. Ogle "objects to the Magistrate Judge's R&R determination that Ground One is exhausted [and] that a remedy was no longer available at the time Petitioner's Petition was filed because of a state procedural rule. . ." *Id.* at PageID 3837. However, Petitioner does not suggest in her Objections what that remedy would be or if it is still available to her.

The Report itself does not make a determination that Ms. Ogle has exhausted state court remedies. Rather, it recites the exhaustion requirement as part of the general law regarding

8

procedural default (Report, ECF No. 91, PageID 3744). If there is a procedure by which a habeas petitioner can return to state court and exhaust her claim, the federal court cannot consider that claim until the state court remedy has been exhausted; a so-called mixed petition with some exhausted and some unexhausted claims must be dismissed or stayed pending exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982).

Although no exhaustion determination was made in the Report, on September 19, 2016, the Magistrate Judge denied Ms. Ogle's motion to hold the case in abeyance, holding

> Ms. Ogle does not in the Motion suggest what additional state court remedies she believes she has available. Nor does she suggest any possible state court remedy in her Reply. She certainly has not tendered with her Motion a copy of any state court proceeding already filed or a draft of any pleading that she might file. She speaks generally of "post-conviction relief," but of course any relief now obtained would be post-conviction. An Ohio Crim. R. 33 motion for new trial based on evidence discovered in the course of a trial in March 2015 would run afoul of that Rule's strict time limits. Ms. Ogle's time to file a petition for post-conviction relief under Ohio Revised Code § 2953.21 has long since expired; such a petition at the time of the state court proceedings in this case was required to be filed within 180 days of the filing of the trial transcript in the court of appeals on direct appeal.

(Corrected Decision and Order, ECF No. 81, PageID 3684.) That decision has been upheld by Chief Judge Sargus over Ms. Ogle's objections (ECF No. 86).

Ms. Ogle objects at length to the Report's conclusion Ground One is without merit (Objections, ECF No. 91, PageID 3837-45).

As the Report shows, Ms. Ogle appeared for sentencing on September 27, 2011, without counsel. She had theretofore filed a notice of appearance pro se on September 21, 2011. At the commencement of the hearing, Judge Crawford had the bailiff hand her a waiver of counsel which she did not sign. He stated his understanding that she "did not want to sign" it and she

replied "I do not waive the right to counsel." (State Court record, ECF No. 13-3, PageID 1017.) Judge Crawford then read the part of the Notice of Appearance in which Ms. Ogle said she was waiving her right to counsel "at this time or until subsequent notice." *Id.* Ms. Ogle then said she was at that point in time giving notice that she was not waiving her right to counsel. *Id.* Judge Crawford then asked "Have you tried to retain counsel?" Ms. Ogle responded that she had "an inability to retain counsel." Judge Crawford interpreted that as a claim of inability to afford to retain counsel and asked if Ms. Ogle wanted him to appoint counsel for her. *Id.* at PageID 1018. Ms. Ogle woodenly responded "I have an inability to obtain counsel" without saying why. Judge Crawford again explained that Ms. Ogle had the right to have counsel, that he would appoint counsel at no expense to her if she wanted and could prove inability to pay or she could continue to represent herself. Judge Crawford asked her directly "So do you want the Court to appoint counsel?" Ms. Ogle refused to answer that question, but repeated her prior formalistic response. *Id.* Judge Crawford then proceeded with the sentencing hearing without further inquiry about counsel.

> Based on these facts of record, the Report concluded
>
>> As Petitioner failed to state "yes" on any of the multiple occasions when asked by the Court whether she wanted counsel, she did not clearly invoke this right. Further, as shown later in the transcripts, even if she had properly indicated her desire to be represented by counsel, she failed to fill out an affidavit of indigency to demonstrate she was entitled to court appointed counsel due to her financial situation (ECF No. 13-4, PageID 1037-1041). This Ground for Relief is without merit.

(ECF No. 89, PageID 3747-48.)

Ms. Ogle objects that she "did <u>not</u> waive her Constitutionally <u>entitled</u> assistance of counsel in <u>any</u> way. . . " (Objections, ECF No. 91, PageID 3837, emphasis sic).

Ms. Ogle does not claim now and did not claim in front of Judge Crawford that her pro se

Notice of Appearance, filed six days before sentencing and which contained a waiver of counsel, was anything other than a knowing, intelligent, and voluntary waiver of counsel sufficient to satisfy the requirements of *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). What she claims instead, albeit in different words, is that she validly revoked that waiver at the time of sentencing.

Under the Sixth Amendment, all criminal defendants faced with a possible confinement sentence have the right to representation by counsel at every critical stage of the prosecution, certainly including sentencing. *Powell v. Alabama*, 287 U.S. 45 (1932)(capital cases); *Gideon v. Wainwright*, 372 U.S. 335 (1963)(felony cases); *Argersinger v. Hamlin*, 407 U.S. 25 (1972)(misdemeanor cases where imprisonment is a possibility); *Alabama v. Shelton*, 535 U.S. 654 (2002)(even if sentence is suspended). At the same time, criminal defendants have the right to represent themselves. *Faretta v. California*, 422 U.S. 806, 835 (1975). "In the federal courts, the right of self-representation has been protected by statute since the beginning of our Nation. Section 35 of the Judiciary Act of 1789, 1 Stat 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment was proposed, provided that "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of . . . counsel. The right is currently codified in 28 U.S.C. § 1654." *Id.*, at 812-13. While that statute does not apply in state courts, the constitutional right recognized in *Faretta* does.

Petitioner asserts that the Constitution prohibits "confining a defendant who lacks counsel and has not validly waived his or her right to counsel . . .<u>regardless</u> of whether the defendant is indigent." That is not so. The Sixth Amendment right to counsel, like many other constitutional rights, can be forfeited if not properly invoked. For example, a person who

11

continues to answer police questions when in custody and warned of his *Miranda* rights forfeits his privilege against self-incrimination under the Fifth Amendment. "We note here the distinction between defenses that are 'waived' and those that are 'forfeited.' A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve. *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13 (2004); *United States v. Olano*, 507 U.S. 725, 733 (1993)." *Wood v. Milyard*, 566 U.S. 463, n.4 (2012).

In this case Petitioner forfeited her right to be represented by counsel at sentencing by (1) validly waiving her right to counsel six days before sentencing, (2) showing up at sentencing without an attorney, and (3) refusing to answer Judge Crawford's questions about her ability to retain counsel.

Petitioner now claims that her "inability" to obtain counsel was caused not by lack of funds, but by the fact that she had been prohibited from having contact with "any juror, witness, lawyer or the Court while on bond." That Bond Order is not in the state court record as filed by Respondent. Petitioner repeatedly criticizes the Report for not referring to the Bond Order, but if it is elsewhere in the record, Petitioner has provided no record reference, even in the Objections, as required by the Order for Answer.

Substantively, Ms. Ogle never informed Judge Crawford of her esoteric interpretation of the bond order as applying to all lawyers rather than just the lawyers who had tried the case. Because Ms. Ogle did not explain what she meant by inability to obtain a lawyer or ask for an exception to the bond order, she forfeited her right to have an attorney at sentencing.

Petitioner argues that a sentence pronounced on a person who is unrepresented by counsel is void (Objections, ECF No. 91, PageID 3838, citing six Ohio Supreme Court cases). None of the cases cited stands for that proposition. Petitioner relies on *Wilson v. Parker*, 515

F.3d 682 (6th Cir. 2008). In that case the Sixth Circuit found a habeas petitioner had waived his Sixth Amendment right "where a defendant with a history of switching attorneys knew of his right to counsel, knew the charges and potential penalties, and rejected appointed counsel while asserting he did not want to represent himself." *Id.* at 695, *citing King v. Bobby*, 433 F.3d 483 (6th Cir. 2006).

Petitioner now says she

> understood the law to be that she was guaranteed the right to be represented by counsel at a sentencing hearing, by the Sixth and Fourteenth Amendments to the Constitution, but that was certainly not what she was being told by Judge Crawford during the sentencing hearing, or what was represented on the indigency affidavit she had reviewed.
>
> Petitioner had read *Jackson v. Wickline*, 153 Ohio App. 3d 743, 2003-Ohio-4354 after her husband contacted the Ohio Public Defender's Officer, the day before the unlawful sentencing hearing, who referred him to the case. *Wickline* discusses the trial court's necessity to hold a hearing regarding a defendant's inability to obtain counsel, and additionally cites *State v. Tymcio*, 42 Ohio St. 2d 39 (1975), which states, "The constitutionally protected right to the assistance of counsel is absolute."

(Objections, ECF No. 91, PageID 3841.) There is certainly no evidence in the state court record of Ms. Ogle's understanding of her Sixth Amendment right. She said nothing to Judge Crawford about that reading or *State v. Tymcio*. Instead, she stubbornly refused to respond directly to his questions, to explain why she believed she did not have to complete the indigency affidavit or why she was "unable to obtain counsel." Under these circumstances, she forfeited her right to counsel at sentencing.

In sum, Ground One is procedurally defaulted because it was not raised on direct appeal and it is without merit because Petitioner forfeited her right to be represented at the sentencing hearing.

**Ground Two: Prosecutorial Misconduct**

The Report reads Ground Two as a *Brady/Giglio/Napue* claim that Ms. Ogle was convicted on false testimony of Deputy Woodgeard which the State knew was false and had a duty to correct by disclosing a letter from Woodgeard's treating physician which Ogle claims shows Woodgeard lied at trial (Report, ECF No. 89, PageID 3748-53). The Report concluded the letter was not material and therefore there was no prosecutorial misconduct in failing to disclose it. *Id.* at PageID 3753.

Petitioner's Objections continue to insist the letter is material (Objections, ECF No. 91, PageID 3846-49). They rely in part on testimony evidence obtained in discovery in the Ogles civil rights case against Woodgeard and other evidence which is not part of the state court record and has been excluded from admission here, including evidence supposedly supporting Ms. Ogles' actual innocence "gateway" claim. All of that evidence has been excluded and the Objections therefore require no further analysis of Ground Two.

**Ground Three: State Court Denial of Post-Trial Motions**

In her Third Ground for Relief, Petitioner asserts the state courts deprived her of due process of law by not granting her a new trial on the basis of the claims she raised in her motion for that relief. This claim was preserved for merits review and the Report accordingly quotes at length from the Fourth District's decisions (Report, ECF No. 89, PageID 3755-64).

Having reconsidered the Report in light of the Objections, the Magistrate Judge does not

believe further analysis is necessary.

**Ground Four: Insufficiency of the Evidence**

In her Fourth Ground for Relief, Ms. Ogle asserts she should have been granted an acquittal because the evidence was insufficient for conviction. This issue was also decided on direct appeal and the Report quotes the relevant Fourth District opinion at length (ECF No. 89, PageID 3767-77). The Report then found that under the doubly-deferential standard of the AEDPA, there was sufficient evidence to convict. *Id.* at PageID 3779-84.

Having reconsidered the Report in light of the Objections, the Magistrate Judge does not believe further analysis is necessary.

**Ground Five: Ineffective Assistance of Appellate Counsel**

In her Fifth Ground for Relief, Petitioner contended she had received ineffective assistance of appellate counsel in eighteen different respects (ECF No. 89, PageID 3784-85). The Report concluded this Ground for Relief was procedurally defaulted because (1) Ms. Ogle's applications for reopening under Ohio R. App. P. 26(B) were twice rejected as untimely and she did not appeal to the Ohio Supreme Court and (2) Ms. Ogle had not fairly presented to the Ohio courts the same claims of ineffective assistance of appellate counsel she presented here. *Id.* The Report also concluded Ms. Ogle had not met the actual innocence standard of *Schlup v. Delo*, 513 U.S. 298, 316 (1995), to excuse her procedural default. *Id.*

Petitioner offers no new argument on Ground Five but indicates she is preserving her actual innocence claim for appeal (Objections, ECF No. 91, PageID 3853). Accordingly no additional analysis is required.

**Ground Six: Improper Jury Instructions**

In her Sixth Ground for Relief, Petitioner argues the jury instructions given at trial misled the jury.

The Report found this claim was procedurally defaulted because no contemporaneous objection was made at trial to the instructions now claimed to be misleading (Report, ECF No. 89, PageID 3802). Alternatively, the Report found the claim was without merit. *Id.* at PageID 3804.

The Objections claim is conclusory form that the instruction errors rise to a constitutional level (Objections, ECF No. 91, PageID 3853). No argument is offered on this point, so no further analysis is needed. As to procedural default, Ms. Ogle merely preserves her appellate rights regarding her actual innocence claim. *Id.* at 3854.

**Ground Seven: Appellate Court Reliance on "New" Facts**

In her Seventh Ground for Relief Ogle contends that the appellate court improperly relied upon non-existent facts and a new theory when making its decision, resulting in a violation of her constitutional rights (Amended Petition, ECF No. 21, PageID 2834).

The Report treated this Ground for Relief as restating Ms. Ogle's claims about inconsistencies in the evidence which were analyzed at length (Report, ECF No. 89, PageID 3808-15). Ms. Ogle writes very little about this analysis. On the one specific objection she does make, she provides no record references. Here again she also stands on her actual innocence claim (Objections, ECF No. PageID 3854), although the Court did not find this Ground for Relief procedurally defaulted.

**Ground Eight: Juror Misconduct**

In her Eighth Ground for Relief, Petitioner asserts that new evidence of juror misconduct was discovered after trial. The Report found this claim procedurally defaulted and the Objections merely preserve the actual innocence argument for appeal (Objections, ECF No. 91, PageID 3855).

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).

Petitioner has previously argued that as a pro se litigant she should be granted, without asking, more than seventeen days to file Objections in order to make more equal the objection time of those who received Reports and Recommendations by mail and those who received them electronically (ECF No. 95). The Federal Rules of Procedure provide only the three extra days after service by mail. No court to this Court's knowledge has ever found that amount of extra time to be constitutionally too little. Petitioner is cautioned that if she requires more than seventeen days to file any objections she may have to this Supplemental Report, she must request

an extension of time in writing in advance of the deadline.

May 1, 2017.

s/ *Michael R. Merz*<br>
United States Magistrate Judge